DENIS ROBILLARD *vs.* SOCIETE ST. JEAN BAPTISTE DE
CENTREVILLE.

PROVIDENCE—JUNE 14, 1899.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Construction of By-Laws of Beneficial Association.*

The word "sickness," as used in the by-laws of a beneficial association, includes insanity and mental alienation.

ASSUMPSIT for weekly benefits by a member of a beneficial association.   Heard on agreed statement of facts.

MATTESON, C. J.   This is an action to recover from the defendant, a beneficial society, moneys claimed to be due, under the by-laws of the society, as sick benefits.   The facts, as shown by the agreed statement, are as follows:   In 1887 Denis Robillard joined the defendant society, and some time in 1890, while still a member, became, or was discovered to be, insane, and was paid by the defendant the benefits to which as an insane person he was entitled, under the by-laws of the society then in force, for a period of a year or more,. and until September 1, 1892.   Those by-laws were as follows:

### "ARTICLE XXVIII.

#### OF BENEFITS.

SECTION 1.   A member who shall find himself completely incapable of working on account of sickness, accident or mental alienation, shall receive five dollars per week, so long as he shall furnish proper certificates.

SEC. 3.   When a member shall have received two hundred dollars for the same sickness, with or without intermission allowing him to work, but never being completely cured, he then shall be entitled only to two dollars per week."

In May, 1892, section 1 of these by-laws was amended by striking out the words "mental alienation," and so as to read as follows:

"SECTION 1.   A member in good standing, who finds himself completely incapable of working on account of sickness or accident, shall receive five dollars per week, so long as he shall furnish proper certificates."

These amendments took effect September 1, 1892.   Robillard, after it was known that he was insane, was removed from Boston, where he was then living, to Long Point, in the Dominion of Canada, and was supported in an institution at public expense until his decease, intestate, May 26, 1896.

At the time of his death he was still a member of the society in good standing, and the society paid his death benefits. From the time the amended by-laws took effect, September 1, 1892, the society ceased to pay him any benefits on account of his insanity or mental alienation, and he never was entitled to any benefits for physical malady or sickness as distinguished from mental alienation or insanity. This suit was brought in the lifetime of Robillard by his guardian, and since his death has been prosecuted by the administrator on his estate in this State. The sum claimed is $322, being for benefits at the rate of two dollars per week from the time when the amendment of the by-laws as stated above took effect, September 1, 1892, to October, 1895, when this suit was brought.

(1)    The question raised is, "Was Robillard entitled, on the facts stated, to benefits because of mental alienation or insanity, after the date on which the amendments to the by-laws went into effect, September 1, 1892." We think the question must receive an affirmative answer. The word "sickness," as used in the by-laws of beneficial societies, is construed to include insanity. In *McCullough* v. *Expressman's Association*, 133 Pa. St. 142, 150, a suit against a beneficial association, Mr. Justice Mitchell remarks: "That insanity is a sickness in some senses of the word is beyond question, and such legal authorities as appear to have considered the question hold that it is sickness within the meaning of such charters and articles of association as the defendant's." And in *Kelly* v. *Ancient Order*, &c., 9 Daly, 292, Mr. Justice Van Brunt says: "Insanity has always been considered a disease, and comes strictly within the meaning of the term sickness." And in *Pallazino* v. *St. Joseph's Society*, 16 Cin. Law Bul. 27, it seems to have been assumed, without question by either party, that insanity entitled a member of such a society to sick benefits. See also *Burton* v. *Eyden*, L. R. 8 Q. B. 295, in which it was held that insanity was sickness within the meaning of the rules of a friendly society by which any member should receive eight shillings per week during any sickness or accident that might befall

him unless by rioting or drunkenness.  Blackburn, J., says: "I am of the opinion that lunacy is sickness within the meaning of the rules of this society. . . . It certainly seems to me that lunacy is a sickness affecting the health of the body in such a way as to prevent a man's ability for earning his livelihood.  If it were not the intention to include it, the rule should be framed so as expressly to exclude it."  And Quain, J., in the same case, states: "I am of the opinion that insanity is sickness within the society's rules."

Perhaps the defendant intended by its amendment of the by-laws of May, 1892, striking out the words "mental alienation," that its members should no longer be entitled to sick benefits on the ground of insanity, since it ceased to pay sick benefits to Robillard from the time these amendments went into effect.  But if such was its intention, it apparently became aware of its failure to accomplish that end by the amendment, for in the revision of its constitution and by-laws in 1896, when it reënacted the amended by-law, it impliedly recognized sickness as including mental alienation by adding to the by-law as it previously stood a clause limiting its liability, so that the by-law now reads as follows: "Article XXX.  Of Benefits.  Sec. 1.  A member in good standing who finds himself completely incapable of working on account of sickness or accident, shall receive five dollars per week, so long as he shall furnish proper certificates.  However, the society shall not pay benefits for mental alienation when insane members shall be at the charge of the State or any institution where those persons are gratuitously supported."

Having answered the question in the affirmative, judgment must be rendered for the plaintiff, in accordance with the stipulation of the parties, for $322 and costs.

*Ambrose Choquet*, for plaintiff.
*Albert R. Greene*, for defendant.