DODGE et al., Respondents, v. KNAPP, Garnishee, Appellant.

St. Louis Court of Appeals, May 2, 1905.

1. **GARNISHMENT: Lien on Property in Garnishee's Hands.** The service of process of garnishment in an action by attachment, under section 3436, Revised Statutes of 1899, does not create a specific lien in favor of the plaintiff upon the property of the defendant in the garnishee's hands, but creates only such a lien as gives the plaintiff the right to hold the garnishee personally liable for it or its value.

2. ———: **Pleading: Issues.** Under section 3451, Revised Statutes of 1899, where, in an action by attachment, a garnishee is served with process and his answers to the interrogatories propounded by the plaintiff are denied, and the garnishee replies to the denial, the issues raised by the denial and the reply constitute the sole issue or issues to be tried.

3. ———: **Service of Process: Waiver.** By filing an answer to the interrogatories propounded by plaintiff, the garnishee appears generally to the proceeding and thereby waives any defect in the service of the process of garnishment.

4. ———: ———: ———. Where a garnishee, in her answer to the interrogatories propounded by the plaintiff, states that "having been summoned as garnishee in the above-entitled cause, makes answer," etc., she thereby admitted the service of process and could not question the sufficiency of the service.

5. **FRAUD: Evidence: Similar Transactions.** In a proceeding against a garnishee, where the issue was whether the defendant had transferred to the garnishee his property with the intent to hinder the plaintiff in the collection of his debts, it was competent to show other transactions between the defendant and the garnishee, which were had for a similar purpose of defrauding the plaintiffs in the collection of the same debt.

6. ———: ———: ———: Res Judicata. In such a case, a former judgment, in an equity suit between the same parties wherein it was decided that the defendant had conveyed his property to the garnishee for the purpose of hindering the plaintiffs in collecting the same debt, was admissible as showing another fraudulent transaction.

7. ———: ———: ———: ———. Such judgment was conclusive of the facts determined in it, that is, that fraud had been committed in the other transaction.

8. EVIDENCE: Letters of Administration: Revival of Suit. Where, on the decease of a party to an action, such action is revived by stipulation of the parties and the name of the administrator of the deceased party, this is an admission that letters of administration were issued and it was unnecessary to introduce them in evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*John S. Leahy* and *Block, Sullivan & Erd* for appellant.

(1)  (a)  In order to charge a garnishee, the service must be sufficient to give the court jurisdiction of the *res* as well as the person of the garnishee.  Huffman v. Sisk, 62 Mo. App. 398; Grocer Co. v. Carlson, 67 Mo. App. 183; Dunn v. Railway, 45 Mo. App. 29.  (b) And in order to show this, respondents must needs have introduced the execution and return in evidence, which was not done.  Spengler v. Kaufman, 43 Mo. App. 11; Hauptman v. White, 88 Mo. App. 188.  (2)  The letters of administration on the estate of the principal debtor were not admissible in evidence, and their admission is presumed harmful.  State v. Buchler, 103 Mo. 203, 15 S. W. 331; Morton v. Heidorn, 135 Mo. 617, 37 S. W. 504; Langston v. Railway, 147 Mo. 467, 48 S. W. 835; Barkley v. Cemetery Ass'n, 153 Mo. 317, 54 S. W. 482; Beard v. Car Co., 63 Mo. App. 392.  (3)  A subsequent creditor cannot attack a transfer without showing an

intent to defraud existing creditors, or a specific purpose to incur liabilities and not pay them. Lander v. Ziehr, 150 Mo. 403, 51 S. W. 742; Grocer Co. v. Smith, 74 Mo. App. 419. (4) Instructions numbered 1 and 2 put the case to the jury on an erroneous theory. Implement Co. v. Bouton, 159 Mo. 213, 60 S. W. 87.

*Jones, Jones & Hocker* and *Walter H. Saunders* for respondents.

(1) The lien upon the funds in the hands of the garnishee was not released by the consent order entered on April 19, 1904. On the contrary, it was expressly preserved. (2) The garnishee, by her sworn answer to the interrogatories, by her pleading, by her consent order, by her motions, by her instructions and by her appeal, admitted that she had been properly served as garnishee, and cannot now take the position for the first time that she was improperly made a party to this record. The jury's verdict reciting the date of the service of the garnishment shows that it was introduced in evidence. The execution and return thereon in a garnishment proceeding are necessarily part of the record proper. Even were it conceded that this defect exists, the Statute of Jeofails, section 672, R. S. 1899, in terms cures it.

In no event could this point be raised save by a demurrer, and in this case none was offered. A demurrer in this State must be in the form of a request for a peremptory instruction, which request must be in writing. Jones v. Roberts, 37 Mo. App. 177. Parties are bound by instructions given at their request. Neosho Co. v. Neosho, 136 Mo. 498, 38 S. W. 89; Drug Co. v. Self, 77 Mo. App. 284. They are estopped to complain of instructions by having similar ones given. Christian v. Ins. Co., 143 Mo. 460, 45 S. W. 268; Bauer Co. v. Smith, 74 Mo. App. 419.

Dodge v. Knapp.

STATEMENT.

It appears from the evidence that Ralph Hammond Pybus, alias Ralph Hammond Knapp, inherited an estate of about eight thousand dollars from his father, who died in England, and employed the respondents, a firm of attorneys at law, in the city of St. Louis, to recover the estate for him. After a prolonged investigation by respondents, in 1900, Pybus went to England for the purpose of collecting his estate and collected about eight thousand dollars and sent his mother, the appellant, a draft for fifty-four or fifty-five hundred dollars, which she appropriated to her own use. Pybus failed to pay respondents for their services and they instituted suit against him in the circuit court of the city of St. Louis and, on October 31, 1902, recovered a judgment against him for $2,017. As is shown by the record, execution was issued and returned by the sheriff *nulla bona*. The return shows that by order of plaintiffs in the execution, process of garnishment was served on appellant, Anna Knapp. On this return the suit of E. C. Dodge and T. E. Mulvihill against Anna Knapp, garnishee of Ralph Hammond Pybus alias Ralph Hammond Knapp was entered upon the docket of the circuit court and interrogatories in the usual form were exhibited to the garnishee. Her answer to each interrogatory was "No."

Respondents filed a denial to the garnishee's answer, charging that said garnishee, Mrs. Anna Knapp, was indebted to the defendant in the execution, Ralph Hammond Knapp, in the sum of five thousand dollars. This denial further charged that the defendant, Knapp, had been indebted to respondents since about October, 1900, and that this indebtedness was well known to the garnishee, his mother. That through the professional services of the respondents, defendant, on or about May, 1902, came into the possession of a large estate, namely, eight thousand dollars, and with the fraudulent intent of secreting his property and defeating the respondents'

just claim, he transferred five thousand dollars to his mother without consideration, and that his mother had full knowledge of the purpose for which the transfer was made and participated in the fraudulent design of her son. The prayer was for judgment against the garnishee for the amount of their judgment previously recovered.

The garnishee filed a reply to this denial, alleging in substance that the different properties transferred to her by Pybus, her son, were transferred in good faith, for a valuable consideration and without any fraudulent purpose on either his or her part.

The issues thus made were tried to a jury, who found that upon the nineteenth day of February, 1903 (the date of service of the garnishment), the garnishee had in her hands, belonging to Ralph Hammond Pybus, otherwise known as Ralph Hammond Knapp, the sum of three thousand dollars, and a judgment was rendered on the verdict requiring the garnishee to pay to the sheriff $1,818.42 (balance due on the judgment) on or before June 18, 1904. After taking the usual steps to preserve her exceptions to the ruling of the court on the trial, the garnishee appealed to this court.

The appellant is the mother of Ralph Hammond Pybus, who was the oldest of her three children by Pybus. It appears that after the death of her husband in England, appellant came to the city of St. Louis with her children and married her present husband, Mr. Knapp, whose yearly income, she testified, was about ten thousand dollars. She testified that after her marriage to Mr. Knapp her three children lived with them as members of their family and were well treated and provided for by Mr. Knapp. She also testified that Ralph Hammond was her oldest child and she knew, for that reason, he would inherit all of his father's estate in England and to do justice to her other two children who could not share in the inheritance, she made a contract with her son Ralph, when he was fourteen years of age, to the

effect that she should furnish the money to educate him (which she says she was not able to do for her other two children) he agreeing that when he came into his inheritance he would reimburse her for the expenses of his education; that when he attained his majority he went to England to collect his estate and she gave him two thousand dollars to enable him to make the trip, and that this this sum and what she had expended for his education, books, etc., during his minority amounted to about sixty-five hundred dollars. Appellant also testified that while her son was in England he sent her a draft for fifty-four or fifty-five hundred dollars to be applied on this indebtedness, and in June, 1902, she deposited this draft to her own credit in the Mississippi Valley Trust Company and subsequently drew the whole of it and used it for her own purposes. This part of her evidence was corroborated by the evidence of Georgia Knapp, her daughter.

On cross-examination, appellant stated that after the commencement of the garnishment proceedings she was advised by her son, Ralph Hammond, and her other children to draw the money from the Trust Company, that it would be best to have it at home.

C. E. Ramlose, a shoe manufacturer, testified on behalf of respondents, that he was the father of Miss Clara Ramlose, who married Ralph Hammond Knapp, on November 24, 1903, and that they lived at his house after the marriage; that he knew Mrs. Anna Knapp, the garnishee, and Miss Georgia Knapp, her daughter.

"Q. Did you ever have any conversation with Mrs. Anna Knapp about this Dodge and Mulvihill litigation she was having? A. Yes, sir; I had some.

"Q. What did she say to you about it? A. Why, she told me that she and her daughter held Ralph's money, that they could beat Dodge and Mulvihill out of it and they only held it for the benefit of Ralph and they had held it to beat Dodge and Mulvihill out of the money.

"Q. For the purpose of doing that? A. Yes, sir; she said so repeatedly; several times.

"Q. Was the question of defending this claim of Dodge and Mulvihill discussed between you and Mrs. Anna Knapp? A. Yes, sir.

"Q. What did she say in regard to that? A. She said Dodge and Mulvihill couldn't collect anything because Mrs. Knapp would consume it for board money and Mrs. Knapp would hold the money and had held the money .

"Q. Did she say anything about the reason why no defense was made to the original suit brought by Dodge and Mulvihill? A. Yes, sir.

"Q. What was the reason? A. She said this had been put away to beat Dodge and Mulvihill. By holding the money they would not employ an attorney to fight the other case.

"Q. They would hold the money? A. Yes, sir."

Witness also testified that after Ralph's death, Mrs. Knapp, the garnishee, told him that she wished she had said that Ralph had lost his money in gambling.

"Q. What did she say after he was dead? A. After he was dead she said she might as well say Knapp had gambled all his money up as to say that he had paid it to her."

Pending this proceeding Ralph Hammond Pybus died, and his wife, Clara P. Knapp, administered on his estate. After her appointment as administratrix, to-wit, April 19, 1904, the following order was entered in the circuit court by consent of all parties:

"Now, at this day, come the plaintiffs by attorney, and also comes the garnishee herein, and Clara P. Knapp, administratrix of Ralph Hammond Pybus, otherwise known as Ralph Hammond Knapp, by their respective attorneys, and file herein a stipulation and submit the same to the court and in accordance with the said stipulation, the death of said Ralph Hammond Pybus,

otherwise known as Ralph Hammond Knapp, is suggest-
ed *nunc pro tunc* as of January 20, 1904, and by consent
of the parties it is ordered and adjudged by the court
that said Clara P. Knapp, administratrix of said Ralph
Hammond Pybus, otherwise known as Ralph Hammond
Knapp, be made a party to this suit, and that the judg-
ment rendered in the case No. 25,419 of this court, in
favor of said Ernest C. Dodge and Thomas E. Mulvihill,
and against said Ralph Hammond Pybus, otherwise
known as Ralph Hammond Knapp, on the thirty-first
day of October, 1902, for the sum of two thousand and
seventeen dollars ($2017) be revived and the lien thereof
continue from the thirty-first day of October, 1902, for
said sum, interest and costs of suit against the said ad-
ministratrix."

Respondents, over the objection of appellant, offer-
ed and read in evidence the pleadings and a decree of the
St. Louis Circuit Court in a suit wherein Dodge and
Mulvihill were plaintiffs and Anna Knapp, Georgia
Knapp, Ralph Hammond Knapp, and the St. Louis
Trust Company, trustee, were defendants, in which suit
a decree was rendered in favor of the plaintiffs finding
that Anna Knapp by a certain will took a life estate in
certain described real estate, the remainder to her three
children in the following proportions: Ralph Ham-
mond Knapp, two-twelfths; Georgia Knapp, five-
twelfths and Lester Knapp, five-twelfths.

The decree further found that Ralph Hammond
Knapp conveyed his two-twelfths interest, as well as a
five-twelfths interest, which his sister, Georgia Knapp,
had previously conveyed to him, to his mother, Anna
Knapp, as trustee for his sister, and that this convey-
ance with respect to said two-twelfths interest, was vol-
untary as to said Ralph Hammond Knapp, and "made
without any good, valuable, or adequate consideration
and with fraudulent intent and purpose, participated in
by said Ralph Hammond Pybus, alias Ralph Hammond
Knapp, and said Anna Knapp and said Georgia Knapp

for the purpose of defeating the rights of the plaintiffs (Dodge and Mulvihill) as creditors of said Ralph Hammond Pybus, alias Ralph Hammond Knapp."

The decree declared this conveyance as to this two-twelfths interest null and void and established the lien of plaintiff's judgment as to this two-twelfths, and directed the sheriff of the city of St. Louis to sell it after due advertisement according to law, and to apply the proceeds, after the payment of costs, upon plaintiff's judgment.

Over the objection of appellant, respondents introduced the letters of administration on the estate of Ralph Hammond Pybus.

The court gave the following instructions for respondents, to which appellant objected:

"1. If the jury believe and find from the evidence that the garnishee, Mrs. Anna Knapp, received from Ralph Hammond Pybus in 1902, the sum of $5000; that the said sum was not in good faith paid to the garnishee as compensation for the maintenance, education and support of Ralph Hammond Pybus during his minority and the said sum was paid by said Ralph Hammond Pybus with the purpose, intent and design on his part to hinder, delay and defraud his creditors, and if you further find the garnishee had knowledge of said purpose and design on the part of said Ralph Hammond Pybus at the time she received said money, and that she received the same to aid said Ralph Hammond Pybus in said purpose and intent, then your verdict should be in favor of the plaintiff and against the garnishee.

"2. If the jury shall believe and find from the evidence that the garnishee, Mrs. Anna Knapp, received from Ralph Hammond Pybus, in 1902, the sum of $5000; that said sum was paid to the garnishee as a compensation for the maintenance and education furnished to Ralph Hammond Pybus during his minority, and that said sum was paid by the said Ralph Hammond Pybus and received by the garnishee with the purpose, intent

and design on the part of both the said Ralph Hammond Pybus and the garnishee to hinder, delay and defraud the creditors of the said Ralph Hammond Pybus, then your verdict should be in favor of the plaintiff and against the garnishee."

BLAND, P. J. (after stating the facts). 1. Appellant makes the point that her demurrer to the evidence should have been sustained, on the ground that the order of April 19, 1904, reviving the original judgment against the administratrix of Ralph Hammond Pybus merged that judgment in the one as revived and had the legal effect to waive the lien of attachment on the property in the hands of the garnishee. In respect to this point, if there was an instruction offered by appellant to the effect, that under the law and the evidence the respondents could not recover, sometimes erroneously termed a demurrer to the evidence, it failed to get into the record. The service of process of garnishment on appellant had the effect of attaching in her hands all personal property, money, rights, credits, etc., of the defendant in the execution, Ralph Hammond Pybus (sec. 3436, R. S. 1899) ; but did not create a specific lien in favor of the respondents upon the money or property of Pybus in the garnishee's hands, but created only such a lien as gave the respondents the right to hold appellant personally liable for it or its value. [McGarry v. Lewis Coal Co., 93 Mo. 237, 6 S. W. 81; Calumet Paper Co v. Haskell Show Ptg. Co., 144 Mo. l. c. 339, 45 S. W. 1115; Marx v. Hart, 166 Mo. l. c. 524, 66 S. W. 260.] By the service of the garnishment on appellant, the process or suit to enforce the attachment against the money, etc., in her hands was begun (Marx v. Hart, supra.; Westheimer & Sons v. Giller, 84 Mo. App. 122) ; and where, as was done in this case, the answer of the garnishee to the interrogatories propounded to her is denied and the garnishee replies to the denial, the issue or issues raised by the denial and the reply, by section 3451, chap. 33, en-

titled "Garnishment," R. S. 1899, is declared to be the sole issue or issues to be tried, hence the question raised by appellant's second and third points, that the execution and return of the service of garnishment were not offered in evidence, are not available on a trial of the issues raised by the denial and the reply. The only method by which the sufficiency of the service of the garnishment could have been properly brought to the attention of the trial court was, under the circumstances, either by a plea in abatement or by motion to quash the return of the officer of the service of garnishment. By filing her answer to the interrogatories, the garnishee appeared generally to the proceedings and this general appearance was a waiver of any defect in the service of the process, if there was any, and especially is this so where it is stated, as did the appellant in her answer, "that having been summoned as a garnishee in the above-entitled cause, makes answer to the interrogatories of said plaintiffs as follows." By this declaration in her answer, appellant admitted that she had been summoned as garnishee in a lawful manner and for a lawful purpose. [Keith v. Territory, 57 Pac. 834.] The term "duly summoned" signifies that appellant was properly and regularly served with notice of garnishment. [Robertson v. Perkins, 129 U. S. 233; Bank v. City of Port Townsend, 47 Pac. 896.]

2. The fourth point relied on by appellant is that the court erred in admitting the record of the prior equity suit between the parties. It is the well-settled law in both civil and criminal cases that where it is essential to prove intent or motive to solve the question, it is admissible to prove that the party charged, at or about the same time, committed other frauds; in criminal cases for passing counterfeit money, forging or putting into circulation other forged notes and the like; and in civil cases, alleging fraudulent transfers of property by defendant, it is competent to show that he executed

other fraudulent conveyances of his property with the intent to hinder and delay his creditors, if such conveyance were a part of the same system, conspiracy or scheme made in furtherance of the same fraudulent purpose. In respect to the admissibility of this character of evidence, the law is well stated by Judge ELLISON in Tracy v. McKinney, 82 Mo. App. l. c. 512, as follows:

"Where a fraudulent intent is a necessary element in a case then other similar practices are admissible for the purpose of showing the intent. These questions frequently arise in both civil and criminal cases. The devices to hide a fraudulent purpose in civil transactions are as numerous as the excuses offered to avoid criminal responsibility, and so where the legal wrong depends upon the intent you may, in either case, show other similar acts for the purpose of characterizing the one on trial. In receiving stolen goods, burglary, passing counterfeit money, fraudulent pretenses, etc., the act is frequently admitted by the accused, but the excuse of innocent purpose is interposed. In such cases, other crimes or attempts of the same nature are admitted on that question. And the same is true of civil cases. [Davis v. Vories, 141 Mo. 234; Wood v. U. S., 16 Pet. 342; Bottomley v. U. S., 1 Story 135; Trogdon v. Commonwealth, 31 Gratt. 862.]"

Dr. WHARTON states the doctrine as follows: "Where fraud in a transaction is the question in dispute, to solve this question it is admissible to prove that the party charged was guilty at the same time of other frauds, part of the same system." [Wharton's Law of Evidence, section 33.]

In Bottomley v. United States, 1 Story 135, the general doctrine is declared by Judge STORY to be that in cases of conspiracy and fraud, evidence of other acts, in furtherance of the same general design, is admissible; "first to establish the fact, that there is such a conspiracy and fraud; and, secondly, to repel the suggestion

that the acts might be fairly attributed to accident, mistake, or innocent rashness, or negligence."

In Wood v. United States, 41 U. S. 342, it was held:

"The question was one of fraudulent intent, or not, and upon questions of that sort, where the intent of the party is the matter in issue, it has always been allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate his intent or motive in the particular act directly in judgment." Hennequin v. Naylor, 24 N. Y. 139, and Whittier v. Varney, 10 N. H. 291, announce the same doctrine. Numerous cases from all the State courts, with a few exceptions, and from the courts of England might be cited in support of the doctrine.

Wigmore, in his late work on Evidence, vol. 1, sec. 333, says: "But it is not necessary that the rigorous test of the System rule should be applied, i. e., that the other transfers should be so connected as to disclose a general scheme; . . . it is enough that the other transfers occurred under such circumstances as to tend to negative good faith in the transfer charged."

We think it was clearly competent to prove that the garnishee had been a party to other fraudulent acts and doings with the intent to hinder and delay the respondents in the collection of their debt, and it only remains to decide whether or not the judgment roll in the equity case was admissible for the purpose of showing that she was a party to the fraudulent conveyances declared fraudulent in that suit. Respondents were plaintiffs in the equity suit and Anna Knapp was one of the defendants. One of the issues in the equity suit was whether or not Anna Knapp and her son, Ralph Hammond Pybus, and her daughter, Georgia Knapp, had entered into a fraudulent conspiracy or agreement to hinder and delay the plaintiffs in the collection of their judgment against Pybus, and whether or not in furtherance of said

conspiracy they had executed certain conveyances of real estate with the intent to hinder and delay the respondents in the collection of their debt. The difference in the two suits is in respect to the subject-matter. The equity suit was to set aside fraudulent conveyances of real estate, brought by respondents and against Anna Knapp, as one of the defendants. The ground relied on to set aside the conveyances was that they were made with intent to defraud the respondents as creditors of Pybus. The ground relied on to charge the garnishee is that Pybus, her son, transferred the fifty-four or fifty-five hundred dollars to her for the fraudulent purpose of hindering respondents in the collection of their debt. The principal question for solution in both proceedings was whether or not the conveyances in the one case and the transfer of money in the other were both for the same fraudulent purpose of hindering and delaying the respondents in the collection of their debt. The record in the equity case shows that Anna Knapp and her son, Ralph Hammond Pybus, were parties to fraudulent conveyances of real estate executed for the express purpose of hindering and delaying the respondents in the collection of their judgment against Pybus, the same debt they are now endeavoring to collect of Anna Knapp, as garnishee. If, as the record conclusively shows, the conveyance of the real estate were fraudulent, it (the judgment) is a collateral fact tending to show that the transfer of the money by Pybus to his mother was with the intent to hinder and delay the creditors of Pybus, and that the conveyances of real estate and transfer of the fifty-four hundred dollars were in furtherance of the same system or scheme to defraud the respondents. In fact, the issue of intent to defraud respondents having been raised and adjudged against the garnishee in the equity suit, it seems to us that, on the principle that a judgment as to all points and questions litigated and de-

termined by it is conclusive between the parties, the judgment was not only admissible but was conclusive evidence that the garnishee had participated in the fraudulent conveyances of real estate for the purpose of hindering and delaying respondents in the collection of their debt and that she is estopped by the judgment to deny in the present suit that the conveyances of real estate were not made for the purpose of defrauding the respondents. [Black on Judgments, sec. 609.]

In Hahn v. Miller, 68 Iowa 745, it was held that a judgment for defendant in an action for obstructing a watercourse, if based upon the ground that there was no watercourse to be obstructed, was conclusive in a subsequent action of the non-existence of the watercourse.

"A judgment," says Freeman (1 Freeman on Judgments, sec. 256) "necessarily affirming or denying a fact is conclusive of its existence whenever it becomes an issue between the same parties."

As a collateral fact tending to prove the principal issue on trial, to-wit, whether or not the transfer of the money was made with intent to defraud, the judgment was an issue of fact collateral to the main fact, whether or not the garnishee had been a party to other fraudulent conveyances and transfers of property with the intent to hinder and delay respondents in the collection of the judgment. We think the equity judgment was not only admissible to show this collateral fact, but that it was conclusive proof of it, for it is well-settled law that where the effect of a judgment is to settle a particular issue of fact, that issue must be held *res judicata* as to the adversary parties to the suit and it is not essential to the conclusiveness of the judgment that all the parties to both proceedings are the same. [Nave v. Adams, 107 Mo. 414, 17 S. W. 958; Young v. Byrd, 124 Mo. 590, 28 S. W. 83; Wiggin v. St. Louis, 135 Mo. 558, 37 S. W. 528.] The case of Gutzweiler's Adm'r v. Lackmann, 39 Mo. 91, cited and relied on by appellant, is not in point.

The alleged fraudulent conveyance sought to be introduced in evidence in that case was in nowise connected with the transfer of the property under investigation. Of course if transactions are wholly disconnected and have no bearing one upon another, the proof of one can in nowise affect the other.

3. The letters of administration on the estate of Pybus were objected to as evidence, on what ground is not stated. The judgment against Pybus was revived against his administratrix on stipulations of the parties which necessarily assumed and admitted that letters of administration had been granted. There was no necessity for introducing the letters and no ground to object to them when offered, except that they prove an admitted fact in the case.

4. The contention made by the appellant that the subsequent creditors cannot attack a conveyance or transfer successfully, without showing a fraudulent intent to defraud creditors existing at the date of the transfer or a specific intent to contract debts and not pay them, has no application to the facts in this case for the reason it is conclusively shown that Pybus' indebtedness to respondents was contracted prior to the transfer of the money by Pybus to his mother.

5. It is contended that instructions numbered 1 and 2 for respondents submitted the case to the jury on an erroneous theory. There is no foundation for this contention, and, besides, appellant's instructions given shows that she adopted the same theory. Having adopted this theory she cannot assert a different one on appeal. [Christian v. Ins. Co., 143 Mo. 460, 45 S. W. 268; Drug Co. v. Self, 77 Mo. App. 284; Grocery Co. v. Smith, 74 Mo. App. 419.]

The case was fairly tried and the judgment is manifestly for the right party, therefore it is affirmed. All concur. *Goode, J.,* in result.