For the reasons assigned, the judgment is affirmed.

## LEWIS v. LIBERTY INDUSTRIAL LIFE INS. CO. *

### No. 16216.

Court of Appeal of Louisiana. Orleans. Feb. 24, 1936.

Lewis R. Graham and Harry R. Cabral, both of New Orleans, for appellant.

Loys Charbonnet and E. B. Charbonnet, Jr., both of New Orleans, for appellee.

McCALEB, Judge.

On July 3, 1922, the defendant, Liberty Industrial Life Insurance Company, insured one Lillian Fisher against disability from sickness or accident, subject to certain conditions expressed in the policy contract.

During the year 1931, while the insurance policy was in force and effect, Lillian Fisher became insane. On May 27, 1931, she was committed to the East Louisiana hospital at Jackson, La., at which institution she has been continuously confined as a patient therein.

In the proceedings entitled "Interdiction of Lillian Fisher," No. 206,079 of the civil district court, the insured was interdicted and the plaintiff herein, Alma Lewis, was appointed and qualified as curatrix.

Plaintiff, in her representative capacity, filed this suit against the insurer, claiming health benefits under the policy for the years 1931, 1932, 1933, and 1934, together with double indemnity and attorney's fees.

*Rehearing denied March 23, 1936. Writ of error granted April 27, 1936.

The insurer, among other things, based its chief defense upon two premises:

Primarily, that insanity is a disability of the mind and not of the body, and therefore such affliction, although causing permanent, total disability, was neither contemplated by the parties nor covered by the terms of the policy.

Secondarily, that Lillian Fisher, though insane, was not ill physically, and that the policy only covers illness in case the insured is "necessarily confined to bed."

The district judge found for the defendant insurer, being of the opinion that the policy "was never intended to cover a permanent disability of the mind, causing insured to become insane, without physical disability."

The facts are not in dispute. The medical evidence shows that the insured is suffering from dementia præcox, hyperphrenic type. This is described to be a mental disturbance subjecting the afflicted person to hallucinations. Because of the malady affecting her mind, the insured is unable to engage in pursuits of any sort and is totally incapacitated. There are no pathological changes in the brain in persons suffering with this type of insanity.

Notwithstanding the insured's mental derangement, she is physically in good health and has never been confined to bed by reason of her apathy.

The policy in this case insures "against disability from sickness and accident." Insanity is not excluded.

Bouvier's law dictionary defines sickness as follows: "By sickness is understood any affection of the body which deprives it temporarily of the power to fulfil its usual functions. It has been held to include insanity. L.R. [1872–3] 8 Q.B. 295."

Ballentine's law dictionary says: "Insanity has always been considered a disease and comes strictly within the meaning of the word sickness"—citing Robillard v. Societe St. Jean Baptiste de Centreville, 21 R.I. 348, 43 A. 635, 45 L.R.A. 559, 79 Am. St.Rep. 806.

Ruling Case Law, vol. 14, p. 1249, reads: "Insanity is 'sickness or other disability' within a health policy, * * *"—citing McCullough v. Expressman's Mut. Ben. Ass'n, 133 Pa. 142, 19 A. 355, 7 L.R.A. 210.

We hold that insanity is a "sickness" included in that term as used in the policy contract now before us. See Don-len v. Fidelity & Casualty Co., 117 Misc. 414, 192 N.Y.S. 513; American Nat. Ins. Co. v. Denman (Tex.Civ.App.) 260 S.W. 226.

Having found that the disease suffered by the insured is a sickness within the terms of the policy, does the fact that the insured is not confined to bed bar her recovery?

The policy provides "weekly benefits for sickness will only be paid for each period of 7 consecutive days that the insured is, by reason of illness, *necessarily confined to bed* and that he shall remain under the professional care of a duly licensed and practicing physician." (Italics ours.)

The above-quoted provision is clear and unambiguous. It can mean only just what it says. The insured may, under this condition, suffer many known ailments, but liability of the insurer will only attach in the event the insured is necessarily confined to bed.

Counsel for plaintiff asserts that our Supreme Court has held, in the case of Newton v. National Life Ins. Co., 161 La. 357, 108 So. 769, 770, that the test of liability in health policies is disability from sickness rather than actual confinement to bed.

Prior to a discussion of the Newton Case, supra, it is helpful to briefly review some of the holdings by other courts in respect to the causes and extent of the liability of the insurer in health insurance contracts.

Corpus Juris, vol. 29, p. 280, informs: "With reference to sickness indemnity policies, there may be said to be three degrees of sickness, namely: (1) Where the patient is confined to his bed. (2) Where he is not confined to his bed, but is confined to his house. (3) Where he is too sick to work, but is not confined to his house."

Hence the parties to the contract may stipulate for protection against any one or all of the three kinds of sickness. It follows that a contract for payment of benefits in case of sickness disability from work would broadly cover all known sicknesses preventing one from engaging in his usual business. Again, the policy may also be narrow in its terms, protecting only for illness which is house-confining. And, again, the contract may be of a more limited scope, as here, where liability ensues only in case the sickness is necessarily bed confining.

These three classes of health policies have been given a liberal, rather than a literal, interpretation by a vast majority of the courts.

The cases are numerous, particularly so with reference to policies which provide for coverage only in the event the sickness is such that it confines the insured continuously within the house. The great weight of authority in actions falling under this class is that the words "continuously confined to the house" mean that the insured must be substantially confined, and the fact that he makes occasional visits to his physician's office, or takes a trip for his health, or is taken out in the air, all on his physician's advice, will not defeat recovery. See Garvin v. Union Mut. Cas. Co., 207 Iowa, 977, 222 N.W. 25, 61 A.L.R. 633; Interstate Business Men's Acc. Ass'n v. Sanderson, 144 Ark. 271, 222 S.W. 51; Great Eastern Cas. Co. v. Robins, 111 Ark. 607, 164 S.W. 750; Jennings v. Brotherhood Accident Co., 44 Colo. 68, 96 P. 982, 18 L.R.A.(N.S.) 109, 130 Am.St. Rep. 109; Metropolitan Plate Glass & Cas. Ins. Co. v. Hawes' Ex'x, 150 Ky. 52, 149 S.W. 1110, 42 L.R.A.(N.S.) 700; Columbian Relief Fund Ass'n v. Gross, 25 Ind. App. 215, 57 N.E. 145; Van Dusen v. Interstate Business Men's Ass'n, 237 Mich. 294, 211 N.W. 991; Jentz v. National Casualty Co., 52 N.D. 688, 204 N.W. 344; Mutual Benefit Ass'n v. Nancarrow, 18 Colo.App. 274, 71 P. 423; Ramsey v. General Accident, Fire & Life Ins. Co., 160 Mo.App. 236, 142 S.W. 763; American Life & Accident Ins. Co. v. Nirdlinger, 113 Miss. 74, 73 So. 875, 4 A.L.R. 871; Breil v. Claus Groth Plattoutschen Vereen, 84 Neb. 155, 120 N.W. 905, 23 L.R.A.(N.S.) 359, 18 Ann.Cas. 1110; Olinger v. Massachusetts Protective Ass'n, 221 Mo.App. 405, 278 S.W. 86; Musser v. Great Northern Life Ins. Co., 218 Mo.App. 640, 266 S.W. 325; Ætna Life Ins. Co. v. Willetts (C.C.A. 3) 282 F. 26.

The same view of liberal construction holds true in cases where the policy condition, similar to the instant case, is that sickness must necessarily confine the insured to bed.

Ruling Case Law, vol. 14, p. 1318, reads: "A requirement that the insured be confined to his bed also means that the insured must be substantially bed-ridden."

Thus it was held in Nelson v. Washington Fidelity Nat. Ins. Co., 135 Cal.App. 731, 27 P.(2d) 779, that an insured rendered completely helpless by a paralytic stroke was "necessarily, totally, and continuously confined to" bed within health policy, though occasionally lifted out of bed and placed in wheel chair to be taken into the sun, or to his physician's office for treatment. See, also, Home Protective Ass'n v. Williams, 151 Ky. 146, 151 S.W. 361, Ann.Cas.1915A, 260, Bradshaw v. American Benev. Ass'n, 112 Mo.App. 435, 87 S.W. 46, Dodge v. Knapp, 112 Mo.App. 513, 87 S.W. 47, and Hays v. General Assembly American Benev. Ass'n, 127 Mo. App. 195, 104 S.W. 1141, holding that the phrase "necessarily confined to bed" means that the insured must be substantially bed-ridden.

A summary of this jurisprudence reveals that each case, respecting recovery, must be governed by the particular facts involved, giving the conditions of the policy a liberal interpretation with a view of arriving at a fair conclusion disclosing the just intentions of the parties.

In the instant case the insured has at no time been confined to her bed as a result of her affliction. We conceive that allowing her recovery under these circumstances would result in the destruction of the agreement between the parties and substitute therefor a different contract in its place.

But it is insisted that our Supreme Court did just that in the Newton Case, supra.

An examination of the opinion written by Mr. Justice Brunot discloses the following:

Newton had a health policy which contained a condition that: "Weekly benefits at the rate specified in the schedule will be paid each seven days (a) for each day that the insured is by reason of illness under the care of a physician and necessarily confined to bed, except that, where the insured is a male whose place of employment is away from his residence, confinement within the house and medical attention therein, if preceded by at least one week's confinement to bed, shall be sufficient."

While the policy was in force, he was afflicted with a serious illness. The insurer paid him weekly disability for 7 weeks, and then stopped further payments on the ground that he was not confined in the manner provided for in the policy. The insured then brought suit for 104 weeks' additional benefits.

The court, in affirming the judgment in favor of plaintiff, said:

"The district judge found as a fact that plaintiff's illness incapacitated him from work of any kind, and while the plaintiff frequently visited the office of his attending physician for treatment, he construed the word 'confined' as used in the policy to mean inability to do work rather than physical inability to leave the house. We think this interpretation was correct, *especially as plaintiff was totally incapacitated for 7 weeks, and was paid by the defendant $70 or $10 per week for those 7 weeks,* and because condition No. 2 of the policy reads:

" 'That where the insured is a male whose place of employment is away from his residence, confinement within the house and medical attention therein, *if preceded by at least one week's confinement to bed,* shall be sufficient.' " (Italics ours.)

Our reaction to the court's holding is that there was no occasion for an interpretation of the clause "necessarily confined to bed," inasmuch as the insurer admitted, by paying the insured for 7 weeks, that he was confined to bed for the first week. Insured, having been confined to bed for one week, had the right to claim benefits for all other weeks upon a showing that he was sick and confined to the house. In allowing him recovery the court merely applied the rule of liberal construction most favorable to the insured, holding that the fact that he frequently visited the office of his attending physician did not bar recovery, because there was a substantial confinement within the house.

The decision in that case is clearly distinguishable and not controlling here, as the nature of the illness and the conditions in the policy contract are diverse.

■ Courts can only interpret and construe contracts. Where language is plain and unambiguous, sound interpretation requires that it be given its ordinary meaning, having always in view the intention of the parties.

The defendant insurer has raised other defenses respecting notice and proof of claim. In view of our holding, it is unnecessary to pass upon these questions.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

WESTERFIELD, Judge (dissenting).

"All things that are not forbidden by law, may legally become the subject of, or the motive for contracts." Rev.Civ.Code, art. 1764. An insurance contract is no different from any other contract and represents the agreement between the insured and the insurer. There is no reason why an insurance company should not stipulate that its liability be dependent upon the insured being confined to his house, or to his bed, or to a hospital, or any other lawful condition. The theory on which the courts have held that there may be recovery on an insurance contract, in which liability is dependent upon continuous confinement to the insured's house, when, as a matter of fact, he is not so confined, is that it was the intention of the parties to the contract to express, by the words "continuous confinement to the house," a degree of disability or incapacity. By a parity of reasoning, necessary confinement to bed should be held to mean another degree of incapacity or disability, which, in the instant case, is superlative, for no greater incapacity can be imagined than insanity. In neither case does the insured meet the conditions imposed by the literal terms of the policy. Therefore, where the liberal rule of construction has been applied to policies of this kind, and the cases are numerous, the basis of the holding must have been that the fair intent of the policy contract was to insure against disability, the degrees of which were expressed by the words concerning confinement to house or bed. It is my understanding that this was expressly held in Newton v. National Life Ins. Co., 161 La. 357, 108 So. 769.

I therefore respectfully dissent.