ROBERT L. WELSH by Next Friend, etc., Respondent, v. CHICAGO GUARANTY FUND LIFE SOCIETY, Appellant.

Kansas City Court of Appeals, May 29, 1899.

1. **Evidence:** LETTERS BY MAIL: UNPAID POSTAGE: PRESUMPTION. Depositing a letter in the postoffice is not *prima facie* evidence that the addressee received it unless the postage was prepaid and no presumption can be indulged as to its receipt.

2. **Life Insurance:** CHANGING CONTRACT: CORRESPONDENCE. After the rights of the insured and insurer are fixed by contract subsequent letters or notices tending to repudiate or ignore the contract can not affect the status of the parties under the contract.

3. ———: DELIVERY OF POLICY: NOTICE AS TO CONDITION OF INSURED'S HEALTH: JURY QUESTION: INSTRUCTIONS. Whether or not a letter accompanying the transmission of the policy to the insured gave notice that it would be inoperative if the insured was not then in good health is a question for the jury to determine upon the various facts in evidence in this case; and it is held that such issue is submitted to the jury on proper instructions discussed and reviewed in the opinion.

4. ———: PROOFS OF LOSS: WAIVER BY DENIAL OF LIABILITY. Where the insured denies all liability under the policy, proofs of loss are thereby necessarily dispensed with.

*Appeal from the Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

JOHN T. STURGIS for appellant.

(1) Insurance companies in their contracts may impose any conditions not prohibited by law and unless the imposed conditions are assented to and complied with the contracts never take effect. Dumas v. Ins. Co., 40 L. R. A. 358 (Dist. Columbia Court of Appeals); Ins. Co. v. Ewing, 92 U. S. 377; Giddings v. Ins. Co., 102 U. S. 108. (2) Insurance companies may rightfully impose in their original policies or in renewals of the same the condition that the insured shall be in life and health when it is delivered and if not so the policy never takes effect. Misselhorn v. Life Ass'n, 30 Mo. App. 589; Noyes v. Ins. Co., 1 Mo. App. 591. (3) The fact that the policy is delivered and premium paid does not put the policy in force if the conditions on which it is issued are not complied with. Benton v. Martin, 52 N. Y. 564; Rogers v. Ins. Co., 41 Conn. 97; LeRoy v. Ins. Co., 39 N. Y. 56; May on Ins. [2 Ed.], sec. 56, p. 58. And the representations as to health in the application are held to be continuing to the date of delivery. Whitley v. Ins. Co., 71 N. C. 480. (4) When a company issues and delivers a policy on condition that the insured is in life and health and receives the premium in ignorance of the ill health of the insured, the policy is not binding. Ronald v. Life Ass'n, 30 N. E. Rep. 739; Marshall v. Ins. Co., 11 N. Y. Supp. 700; Douglas v. Ins. Co., 83 N. Y. 492. (5) Where a company issues a policy to take the place of another and is free to act in the matter, it may impose any new conditions on the assured it sees proper, and unless the new conditions are complied with the policy is not binding. Ins. Co. v. McTague, 49 N. J. L. 587; 25 Cent. Law Journal,

402; Shaw v. Ins. Co., 67 Barb. (N. Y.) 586; Cahan v. Ins. Co., 69 N. Y. 300.

M. T. JANUARY for appellant.

(1) Where suit is brought on a contract made upon a condition precedent, it devolves upon plaintiff to show in the first instance that the condition has been complied with. St. Louis v. Cruikshank, 16 Mo. App. 495; Seibert v. Chosen Friends, 23 Mo. App. 268; 1 Thompson on Trials, sec. 1172; R. S. 1889, sec. 2079. (2) Instruction number 1, given for plaintiff, is a departure from the issue made by the pleadings, and besides it wholly ignores the defense and is therefore erroneous. Evers v. Shumaker, 57 Mo. App. 454; Helm v. Helm, 52 Mo. App. 615. (3) Peremptory instruction number 8, asked by defendant, should have been given. To constitute waiver of the condition on which the policy was issued there must be both knowledge and acquiescence. Haysler v. Owen, 61 Mo. 270; Johnson Co. v. Lowe, 72 Mo. 637. And it devolves on a party alleging waiver to prove knowledge. Johnson Co. v. Lowe, *supra*. (4) It was error to refuse instructions numbered 7 and 5, based on the defense set up in the answer. Helm v. Helm, 52 Mo. App. 615; Fink v. Phelps, 30 Mo. App. 431.

SCOTT & BOWKER for respondent.

(1) Stipulations, conditions and exceptions ingrafted on the main contract are matters of defense, and the answer must set up affirmatively any special matter of defense under the terms of the policy. Hester v. Ins. Co., 69 Mo. App. 186, and cases cited therein. (2) The court can not direct a verdict in favor of a party sustaining the burden of proof, unless the testimony is documentary or admitted. Jefferson v. Life Ass'n, 69 Mo. App. 126, and cases cited therein. (3) A denial of liability waives proof of loss. Jefferson v. Life

Ass'n, 69 Mo. App. 126; Probst v. Ins. Co., 64 Mo. App. 484; Maddox v. Ins. Co., 39 Mo. App. 198. (4) Contracts of insurance are construed most favorably to the insured, and if provisions are inconsistent or ambiguous, the one most favorable to insured is to be adopted and in the way that the insurance company apprehended the insured would understand it. Brown v. Ins. Co., 45 Mo. 221; Hoffman v. Ins. Co., 56 Mo. App. 301; Burnett v. Ins. Co., 68 Mo. App. 343; Bruner v. Wheaton, 46 Mo. 363. (5) A party is bound by his own construction placed on his contract and is estopped from asserting a different construction after the parties have acted upon it. Krey v. Hussmann, 21 Mo. App. 343. (6) A failure to volunteer information will not vitiate a policy. Worth v. Ins. Co., 64 Mo. App. 583. (7) If an instruction given for plaintiff is right, it is not error because it may be in conflict with one given for defendant, which will be held erroneous in so far as it conflicts. Christian v. Ins. Co., 143 Mo. 460. (8) No misrepresentation made in obtaining or securing a policy of life insurance shall be deemed material or avoid the policy unless the same caused the loss, and such question is for the jury. R. S. 1889, sec. 5849; Session Acts 1897, p. 130; Thassler v. Ins. Co., 67 Mo. App. 505; Jacobs v. Life Ass'n, 142 Mo. 49; Christian v. Ins. Co., 143 Mo. 460.

SMITH; P. J.—This is an action on a life insurance policy. On the first day of February, 1898, Clara Welsh was the owner of a life insurance policy for $1,000, which had been issued her for the benefit of plaintiff by STATEMENT. the Bankers' Alliance of the state of California, on which the dues were paid to April 15, following. Some time prior to February 5, 1898, the Bankers' Alliance, finding itself in an insolvent condition, entered into an arrangement by which the defendant was to reinsure such of its policy holders as were in good health.

Pursuant to this arrangement the defendant, on the day and year last aforesaid, sent to the said Clara Welsh its policy

on her life similar to that she held in the Bankers' Alliance. Inclosed with this was a circular letter purporting to have been written and sent to her by the Bankers' Alliance, in which she was informed that it had effected a union of its policy holders with the defendant. It set forth the direct advantages that would result to her from the union in this way:

"1.   Your new policy begins where your original policy leaves off—there is no break.   2.   Your insurance under your new policy is carried without cost for the full time you may have paid in advance to the Bankers' Alliance.   3.   You will pay your premiums at the same time and in-the same way. 4.   Your new policy—*inclosed herewith*—provides for cash-surrender values, paid up policy, total disability benefit, old age disability benefit, grace in payment of premiums with special second notice by registered letter, insurance paid to beneficiary in yearly instalments, if desired, with interest on deferred balance. Few of these favorable features were given by the Bankers' Alliance.   5.   Finally, you have the protection of a large cash reserve fund, and therefore your insurance is safe.

"The trustees of the Bankers' Alliance feel that in consummating this arrangement, they have done their full duty toward the members.   The condition of the Alliance for more than two years past has been serious, and the time had come when a move of this kind had to be made to save you from loss.   We trust you will concur in the arrangement and accept the change cheerfully.   Any inquiries addressed to the Chicago Guarantee Fund Life Society, Old Colony Building, Chicago, will be cheerfully answered by one of the Bankers' Alliance officers, who will be there.

"YOUR INSURANCE IS NOW IN FORCE, all that you have to do is to pay your next premium when it falls due, as usual."

The testimony of the defendant's witnesses was to the effect that with the policy and circular letter, from which we

have just quoted, was also inclosed a letter from the defendant
to the insured, in which it was stated that: "In explanation
of the inclosed policy we desire to say, that this policy is in
force from the *time you receive it in good health*. It will be
kept in force from the time covered by your last payment to
the Bankers' Alliance. When the next payment becomes
due, you will pay this Society the same amount you have been
paying the Bankers' Alliance."

It appears that the insured, prior to the reception of the
defendant's policy, had not been informed of the insolvent
condition of the Bankers' Alliance, nor as to the said arrange-
ment by which the defendant was to reinsure the risks
carried by the Bankers' Alliance. The plaintiff proved by an
apparently trustworthy witness that there was no letter from
the defendant to the insured accompanying the latter's policy.
It thus appears that the defendant's witnesses testified that
such letter was inclosed with the policy, while that of the
plaintiff testified that none such was received by the insured.

On the back of the policy was, amongst other conditions,
the following: "It is understood and agreed that the applica-
tion referred to in the body hereof is the application to the
Bankers' Alliance of California, by the within named insured,
and this policy is conditioned upon the warranties and agree-
ments therein contained, and the truthfulness of the answers,
statements and allegations appearing in said application. It
is further understood and agreed that the society assumes
no obligation of any kind not expressly and fully specified in
this policy."

On March 15, the defendant gave the insured written
notice that a quarterly instalment of an annual deposit of
premium under her policy would be due April 15, 1898,
amounting to $4.61, and that such payment would carry her
insurance until July 15, 1898, at which date a similar payment
would fall due, and that *unless* such payment was made on or
before the date first above specified her policy would expire

and the premium would not be accepted until she *furnished satisfactory evidence of her good health,* etc. Pursuant to this notice the insured remitted the required amount and the defendant returned her a receipt therefor, "continuing the insurance in force until July 15th, next."

On June 25, 1898, the defendant again gave the insured notice that said quarter-annual premium would be due July 15, following, and that such payment when made would carry her insurance to October 15, 1898. On July 8, 1898, the insured remitted to defendant the amount specified in the said notice of June 25.

The defendant introduced in evidence a letter dated April 4, 1898, purporting to have been written by it to the insured in answer to one received by it from one A. J. King, who signed himself as attorney for the assured. In this letter it is stated that it had offered the policy holders of the Bankers' Alliance a policy in a good company, subject only to the condition that they are of temperate habits, in good health, etc.

It was testified by the defendant's secretary that the letter inclosed a blank health certificate and was deposited in a postoffice letter box in Chicago. There was, however, no evidence that the postage was prepaid on it.

EVIDENCE: letter by mail: unpaid postage: presumption.

The depositing of a letter in the postoffice is not *prima facie* evidence that the person to whom addressed received it unless the postage thereon is shown to have been prepaid. Bank v. Latimer, 64 Mo. App. 321, and cases there cited. It is therefore seen that there is no presumption to be indulged that the insured received the defendant's said letter. There was no evidence whatever that either the insured or her attorney ever received it. This letter proves nothing.

On July 11, 1898, the defendant wrote the insured that as she had failed to sign and return the health certificate required by its arrangement with the Bankers' Alliance, it was impossible to accept payment until a satisfactory health certi-

ficate was received. The insured died on the twenty-eighth of July, 1898.

It seems that the Bankers' Alliance, after making arrangements with the defendant to insure its risks, went into the hands of a receiver. The receiver regarded the action taken by his company with the defendant as irregular and accordingly by circular letter, so notified the policy holders of the defunct company. The defendant thereupon addressed a letter dated March 19, 1898, wherein, referring to the circular of the receiver, it is said that the arrangement with the Bankers' Alliance was entered into in order to protect the stockholders therein, and was ratified by the directors of both companies and "recorded in their minutes." In this letter defendant inquires: "Wherein are you gainer by accepting the New York Company's offer? They concede you nothing by way of reductions of rates or for carrying you for any unexpired time."

It seems that after the reception of this letter and the notice that the first premium on the substituted policy would fall due April 15, the insured concluded to let her policy in the defunct lapse and to accept that which had been sent her by defendant, which she did by making payment and obtaining a written extension of her insurance by defendant

LIFE insurance: changing contract; correspondence.

until July 15, 1898. After the rights of the insured and insurer were fixed by the contract so entered into there were some subsequent letters and notices by the defendant to the insured by which it was seemingly sought to repudiate or ignore the said preexisting contract. These can not have the effect to alter the status of the parties as fixed by the contract nor have they any bearing on the issues in the case.

Even if the arrangement between the Bankers' Alliance and defendant imposed upon defendant the obligation to insure only such of the policy holders of the Bankers' Alliance as were in good health at the time of such re-insurance, yet there

was nothing in that arrangement that forbade to the defendant the right to insure any of said policy holders, without reference to their condition of health at the time of such re-insurance. The policy issued by defendant to the insured shows, as has already been seen, that it was conditioned upon the warranties and truthfulness of the answers and statements contained in the application of the insured for the policy in the Bankers' Alliance. The defendant's policy was based on that application. It is true, the defendant could, if it had chosen so to do, have imposed the further condition that the policy should not be operative unless the insured was in good health at the time of its receipt. It is conceded that there was no statement or agreement on the back of the policy that it should be inoperative unless the insured was in good health at the time of its receipt.

But the insistance of the defendant is, that it gave the insured, at the time of the receipt of the policy by her, notice that such policy would not be operative unless she was then in good health. Whether or not the defendant by letter accompanying the transmission of the policy, or in any other way, gave the insured notice, before or at the time of the receipt of the policy, that it would be inoperative if she was not then in good health, or, in other words, whether or not the insured accepted said policy with the knowledge and understanding that it was to be void if she was not then in good health, was a question for the jury to determine from the various facts and circumstances which the evidence before them tended to establish.

*——: delivery of policy: notice as to condition of insured's health: jury question: instructions.*

The court by the second instruction given for the defendant very properly told the jury that there was no evidence of any contract on the part of defendant to issue policies to all risks of the Bankers' Alliance, whether in good health or otherwise. This was no more than a declaration by the court

that the defendant was free to insure or not to insure any of the policy holders of the Bankers' Alliance, as it saw fit.

The court by the third, fifth, sixth, seventh and eighth instructions was requested to submit the case to the jury upon the theory that the receipt of the premium by defendant did not operate as a waiver of that condition of the policy in respect to the health of the insured, if it was found from the evidence that if the insured, at the time of the receipt by her of the policy, was not in good health, and that she intentionally concealed the fact from defendant by neglecting to answer questions concerning her health, with the intention to defraud defendant. The court gave the third of these and refused the others. It seems to us that the instruction so given was more favorable to the defendant than it was entitled.

If it had so requested it would have been entitled to an instruction telling the jury that if the insured accepted the defendant's policy with the knowledge or understanding that such policy was not to be operative unless she was at that time in good health, there could be no recovery if they believed from the evidence she was not then in good health. The plaintiff did not request of the court, nor did it of its own motion submit the case for plaintiff on the theory that the defendant by the receipt of the premium thereby waived the alleged policy condition in respect to the health of the insured. There was no issue of waiver in the case.

If this action of the court in submitting the case to the jury upon this unauthorized theory was harmful to the defendant it has only itself to blame therefor, since such action was taken upon its invitation.

The theory upon which the case was submitted to the jury by the plaintiff's instruction was authorized by the pleadings and evidence. It was to the effect that if the jury found from the evidence that the policy sued on was issued by the defendant to Clara Welsh to take the place of a policy held by her in the Bankers' Alliance Insurance Company of California, and

that it was the intention of the defendant and of said assured, Clara Welsh, that at the time the policy sued on was issued and delivered to her, that the defendant should thereby assume her said risk that had been carried by the said Bankers' Alliance Insurance Company; and that the said Clara Welsh, in reliance upon the same, accepted said policy and abandoned her said insurance policy in the said Bankers' Alliance Insurance Company, and thereafter paid all dues and premiums due to the defendant on the policy sued on up to the time of her death; and if they further found that the defendant, within the ninety days after her death, after notice thereof, and at all times, denied all liability on the policy sued on, then their verdict should be for the plaintiff, etc.

The theory embodied in this instruction would fail if the insured accepted the policy with the understanding that it was to be inoperative if she was not then in good health.   If the jury found, as they must have, the facts embraced in its hypotheses they must necessarily have further found that the insured did not accept the policy with any such understanding. The evidence was such that the jury might have found that there either was or was not such an understanding.   The plaintiff's instruction was correct in expression and was not, of course, erroneous because it was at variance with that given for defendant which was incorrect.   The contract of insurance entered into between the defendant and the insured was fairly subject to the construction placed upon it by the latter.

Leaving out of view the letter which the defendant contends it inclosed with the policy and nothing appears in the facts of the case until the writing by defendant of the letter of July 11, 1898, declining to receive the premium, then about to become due, because the insured had not sent in her health certificate, which is repugnant to the substitutionary theory relied on by plaintiff.   If the plaintiff's theory was justified by the evidence it was immaterial whether the insured was or was not in good health at the time she received

Welsh v. Chicago Guaranty Fund Life Soc.

the policy. If the new policy was substituted for the old without the condition which the defendant insists on, then the health of the insured was not an issuable fact in the case.

The evidence clearly shows that when the plaintiff's attorneys presented their claim under the policy to the defendant that the latter denied liability. It is true the defendant wrote to plaintiff's attorneys that if they desired to complete proofs of loss that it would furnish blanks for that purpose, but that it "could not recognize any claim under the policy." This being so, why make proofs of loss when there was no recognized liability under the policy? If there was no operative policy, as the defendant contended, there could be no loss thereunder. It would be absurd to offer proofs of loss in such case. The necessity for making such proofs was necessarily dispensed with. The denial, under our law is, as it ought to be, a practical waiver. Probst v. Ins. Co., 64 Mo. App. 484, and authorities there cited.

——: proofs of loss: waiver by denial of liability.

The case on the evidence was one for the jury and not for the court.

There are several other objections interposed to the action of the court in admitting and rejecting evidence but these have been examined and found insufficient to authorize any interference by us with the judgment, which will be affirmed. All concur.