HAYS, Respondent, v. GENERAL ASSEMBLY AMERICAN BENEVOLENT ASSOCIATION, Appellant.

St. Louis Court of Appeals, October 22, 1907.

1. **EVIDENCE: Letters: Signature.**  Where a holder of a health policy wrote to the insurer which issued the policy, and in response received a letter written on the insurer's stationery, dated at its office, mailed in the same city and received by the holder of the policy in due course, the letter was admissible in evidence  in an action on the policy without proof of the genuineness of the signature of the president of the insurance company attached to the letter.

2. **INSURANCE: Proof of Loss: Waiver.**  A letter, written by a health insurance company to an insured denying liability on his policy, within the time provided for presenting proofs of loss, is a waiver of such proofs.

3. **———: Health Insurance: "Entirely and Continuously Confined to Bed."**  Where the owner of a policy of health insurance was afflicted with dropsy for several months such that he was in bed a part of the time every day, although he was sometimes out of his bed for an hour or two in the morning and at one time was driven a short distance in a buggy, he was "entirely and continuously confined to his bed" within the terms of the policy so that he was entitled to a benefit provided on that account.

4. **———: ———: "Second Claim" for Sickness.**  Where a holder of a health policy of insurance presented a claim for sickness which began within a few days after another claim for sickness had been paid by the insurer, this was not a "second claim for any sickness" within the terms of the policy which prohibited such second claim within thirty days, because the second was a different sickness and not traceable to the first.

Appeal from Scotland Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

*E. S. Puller* and *N. M. Pettingill* for appellant.

(1) The testimony of each witness shows that he was not confined to his bed for six months entirely and continuously, but for a considerable portion of the time he was simply confined to the house. During the period for which he recovered indemnity, he was down town, three-fourths of a mile. "A policy which does not provide for indemnity to the holder for time actually lost on account of illness may be of little value but plaintiff accepted a contract of that character and must stand or fall by its terms interpreted according to reason." Bradshaw v. A. B. Ass'n, 112 Mo. App. 435; Lyon v. Assurance Co., 46 Iowa 631; Insurance Co. v. Gray, 26 S. W. 517; Accident Ass'n v. Millard, 43 Ill. App. 148. (2) Plaintiff was not necessarily and continuously confined to bed. Gainor v. Life Ass'n, 46 N. Y. Supp. 965. In the interpretation of a policy, effect should be given to the language, and it should be understood to mean what it says, and, when not inconsistent or ambiguous, no harsher rules of construction should be adopted than for any other contract. Albert v. Order of Chosen Friends, 34 Fed. 721; Niblack on Ben. Societies, p. 284.

*J. M. Jayne* for respondent.

It is a well-settled principle of law in this State where the insurance company denies liability under the policy, proofs of loss are thereby waived. Welsh v. Chicago Guaranty Society, 81 Mo. App. 410; 98 Mo. App. 433; Weber v. Ancient Order of Pyramids, 104 Mo. App. 729. It is a rule of law in this State that the provisions of insurance policies are liberally con-

strued in favor of the insured. Paper Stock Co. v.
Fidelity and Casualty Co., 104 Mo. App. 157.

NORTONI, J.—Plaintiff sues upon a policy of what
is commonly called health insurance, the indemnity
vouchsafed therein being insurance payable to him in
case he should become disabled from sickness within the
terms of the policy. It will be more particularly re-
ferred to in a subsequent portion of the opinion.

Among other things, the policy required proofs of
the sickness to be made in writing in a certain form,
"within a month from the date the disability ceases for
which the indemnity is asked." The answer of the de-
fendant pleaded failure on the part of plaintiff to com-
ply with this condition of the policy and invoked it
as a defense to the action. The plaintiff relies upon a
waiver of the condition because of its having positively
denied all liability on the policy within the time allowed
him for the furnishing of the proofs required.

1.  The facts with reference to this matter are as
follows: It appears that on September 22d, plaintiff
made a detailed report in writing of his sickness and
a claim for sick benefits resulting therefrom, from
March 16th to September 16th of that year, and mailed
the same to the defendant company at its home office
in the city of St. Louis, and in answer to this written
communication from the plaintiff relative to his said
claim, plaintiff received, on September 29th, a letter
written on defendant's stationery at its office in St.
Louis, Missouri, dated September 28th, and purporting
to have been signed by defendant's president, L. A. Cun-
ningham. The contents of this letter acknowledged re-
ceipt of plaintiff's communication and claim and in-
formed him that it had been presented to the company's
board of directors and payment thereof was denied him
"on the ground that the association is not liable for this
disability." The envelope in which this letter was re-

ceived being introduced, bore the name of the defendant association and a direction to return it to defendant in five days at St. Louis, Missouri, if not delivered; all of which was printed in the corner thereof in legible type. The postmark showed it to have been mailed in St. Louis, September 28th, at seven o'clock p. m. and received in Memphis, Missouri, September 29th at ten thirty o'clock a. m. It was properly addressed to plaintiff and received by him in Memphis, his home, in due course. No evidence was introduced by the plaintiff tending to prove the handwriting of Mr. Cunningham, the president of defendant company, whose signature purports to be attached to the letter. Defendant objected to the introduction of this letter for the reason no evidence was introduced tending to prove the handwriting was the signature of Mr. Cunningham, the president of the association, and now urges here the overruling of this objection as an assignment of error. In view of the facts above stated to the effect that this letter from defendant, signed by its president, was received in answer to plaintiff's written communication of September 22d, claiming benefits, it was entirely competent evidence for the purpose introduced even though there was no proof of the genuineness of the signature. There is a well-known exception to the rule requiring proof of handwriting in the case of letters received in reply to other written communications, proved to have been forwarded to the party who answers by letter relative to the same matter. It is fully discussed by Mr. Greenleaf in his work on evidence (14th Ed.), sec. 573a. [See also Kloes v. Wurmser, 34 Mo. App. 453.] The assignment will be overruled.

The letter introduced, containing a positive denial of all liability on the policy by the defendant association, amounts, of course, under the well-established rule, to a waiver of proofs of loss. [Welsh v. Chicago, etc., Life Society, 81 Mo. App. 30; Cauveren v. Ancient Order

of Pyramids, 98 Mo. App. 433, 72 S. W. 141; Weber v. Ancient Order of Pyramids, 104 Mo. App. 729, 78 S. W. 650.] The case was properly sent to the jury insofar as these assignments are concerned.

2. The evidence on the part of plaintiff tends to prove that he was taken quite ill on March 16th, with a dropsical trouble and confined to his bed for a period of six months thereafter, up to September 16th, during which time he was constantly under the care of a physician who called upon him for the first few weeks daily and sometimes twice a day. Afterwards the physician called only two or three times a week, but all of the time plaintiff was taking medicine under the care and following the directions of his physician. From the proof, there is no question as to the plaintiff being "under the charge and subject to the personal calls of a physician." And there is likewise no question as to the fact that he was "wholly incapacitated from transacting any and every kind of work or business" as a result of his sickness, within the terms of the policy.

There seems to be two provisions in the policy with respect to the amount of indemnity paid for different degrees of disability. The fourth section or provision of the contract provides: "Should the member, by reason of sickness or disease—be wholly incapacitated from transacting any and every kind of work or business and as a result thereof, be entirely and continuously confined to bed and under the charge and subject to the personal calls of a licensed physician," he shall be entitled to thirty dollars per month for the first two months; forty dollars per month for the next two months; forty-eight dollars for the next month; and sixty dollars for the next month; whereas section eight of the policy provides that only one-fifth of the indemnity above mentioned shall be paid the member while "confined to the house and under the special calls" of a physician; and the real controversy in this case arose

with respect to whether the plaintiff should be paid under the first provision above quoted, at thirty, forty, forty-eight and sixty dollars per month, as being "entirely and continuously confined to bed" during his sickness, or under the second provision referred to, as being only "confined to the house and under the special calls of a physician." Now this court had occasion to consider the words "entirely and continuously confined to bed," etc., in one of this defendant's policies in Bradshaw v. Ben. Assn., 112 Mo. App. 435, 87 S. W. 46, and the judgment of the court was then given to the effect that it was not intended, by the employment of these words, when considered with the context of the clause of which they are parcel, that a person must spend every minute of his time while sick, in bed, in order to bring himself within its provisions, but that the meaning of the words is that he must be bedridden in a substantial sense; or, in other words, the indemnity vouchsafed in this clause is payable only for such sickness as will confine the patient to his bed nearly or about all of the time of each day and will not permit him to be absent therefrom for any considerable portion of the time on any day. The words employed must be viewed in the light of common sense and there must be some reasonable construction placed upon the words "entirely and continuously" when used in connection with requiring a sick person to keep his bed, otherwise one who is in fact so enfeebled by sickness as to be unable to bear the fatigue of being dressed by an attendant, would forfeit his insurance by sitting propped up in a chair for a few moments or an hour, as a change from a reclining position upon the bed. Now in the case at bar, the plaintiff's proof tended to show he was confined to his bed each and every day during the several months of his sickness. There were times when his dropsical affection rendered him unable to lie in bed, or elsewhere for that matter. He was compelled to sit up in order to

breathe. The pastor of his church testified that he called upon the plaintiff about twice each week and found him in bed on all occasions save one, when he was sitting in the shade of the house for a short time; that all during this sickness he expected him to die almost any day, and so informed inquirers. "I considered him a very sick man at the time and did not think it possible for him to live many days." A neighbor testified: "There were times when he would raise himself up and sit up in order to rest himself, but for something like six months, he was not able to be out. Of course I saw him out in the yard at times." Plaintiff said: "A part of the time I would be up. Some mornings I would be up for maybe an hour and at times I would be out in the yard under a shade tree, along in September." And it is true that on one occasion plaintiff was driven a few blocks down town in a buggy for the purpose of signing a deed of trust. It seems that he was out of bed a short time only, however, to go through this ceremony. All of the evidence tends to establish the fact that while he was up and down, in bed and out of bed on many days during this sickness, he was confined to his bed the greater portion, or nearly all of the time of each day, and on this state of the evidence, we entertain no doubt that he was bedridden in a substantial sense within the provisions of the clause above referred to, all of the time. The jury were instructed that unless they found the plaintiff was bedridden in a substantial sense all of the time during the period of his sickness, the verdict should be for the defendant. They found the issue for the plaintiff and there is substantial evidence to support the verdict. The assignment will be overruled.

3. It appears plaintiff had been sick with the grip from the latter part of January or early in February, until March 10, just prior to the sickness involved in this suit which commenced March 16th, and on March

11th, he made a claim for his disability up to March 10th, which was duly paid by defendant about March 13th. One of the stipulations in the contract of insurance is that no liability shall attach against the association "for any *second claim for any sickness* until after the expiration of thirty days from the payment of any previous claim." This provision of the policy, and the fact of the former settlement had on March 11th to 13th, is invoked in the answer in bar of a recovery here. Now the provision of the policy above quoted is not applicable to the present claim for the reason the sickness involved here is not the same sickness, nor is it traceable, to the former. In other words, this is not a *"second claim for any sickness."* The sickness for which the settlement was made March 11th to 13th, was given in evidence by the attending physician as la grippe, and the present sickness as dropsical in its nature, and the latter is said by the physician to be in no manner connected with or traceable to the former. The provision of the policy inhibits a *"second claim"* in this case for any sickness. The claim presented and determined in this case was a first claim on account of the dropsical affection.

The judgment was for the right party and should be affirmed. It is so ordered.

*Bland, P. J.;* and *Goode, J.,* concur.