## Home Protective Association v. Williams.

(Decided December 10, 1912.)

### Appeal from Warren Circuit Court.

Insurance, Life—Sick Benefits—When Recovery May Be Had.—Under a policy providing for the payment of sick benefits, if the assured was necessarily and continuously confined to bed by sickness; a recovery may be had if the sickness of the assured was such as would reasonably confine a person continuously to bed or substantially so confine him though he may not have remained in bed in fact all the time.

SIMS & RODES for appellant.

WRIGHT & McELROY, GEO. H. GALLOWAY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

When this appeal was originally before us by a clerical error, the policy sued on had not been correctly copied into the transcript. (See Home Protective Association v. Williams, 150 Ky., 134.) Since the opinion was

delivered under an agreed stipulation of counsel the original policy has been filed. One of its provisions following that part of the policy which provides for the payments to be made by the company is as follows:

"From the amount of such payment shall, however, be deducted any disability benefits that may have been paid to said member. In case the above named member shall become wholly disabled by sickness or accident which shall produce visible marks upon the body, and which shall begin after thirty days continuous membership, the association will upon satisfactory proof thereof, pay to said member, as a benefit for loss of time $5.00 per week during the time the member is necessarily confined to his or her bed, beginning with the date of mailing notice to the home office, and for a period not to exceed ten weeks in any one year."

Section 7 of the condition endorsed on the policy among other things provided:

"Neither shall the order be in any manner liable to the member for disability while convalescing from any disease; the order accepting liability only for the actual time the member is necessarily and continuously confined to bed and totally unable to follow his or her vocation. No allowance will be made for fractional parts of a week."

The court gave the jury this instruction:

"The court instructs the jury that if they believe from the evidence that prior to January 5, 1911, Willie Williams was totally unable to follow his vocation or do any labor and by reason of such disability, the defendant company was indebted to him in a sum sufficient to have carried the policy in suit and paid the premiums thereon up to the time of said Willie Williams' death, then and in that event the jury will find for the plaintiff; otherwise they will find for the defendant. The recovery in this case, if you find for plaintiff, not to exceed $300, the amount sued for."

It will be observed that the instruction of the court entirely ignored the words "confined to bed" contained in the policy, and the propriety of this ruling is the question now to be determined on the appeal.

There are numerous cases in which the words "confined to the house" have come up for adjudication under similar policies. In Metropolitan Plate Glass and Casualty Insurance Co. v. Hawes, 150 Ky., 52, we held that under such a clause it was not required that the insured

should be confined all the time in the house and that a recovery might be had where he was able at times to sit on the veranda and get fresh air under the advice of his physician.    There are numerous other decisions to the same effect. See Brail v. Claus Groth Plattdutchen Vereen, 84 Neb., 155, 18 Am. & Eng. Ann. Cases, 110, and note thereto in which a number of decisions on the subject are collected, the sum of the  decisions being that such clauses must be given a reasonable  construction, and that a recovery may be had where there is a substantial confinement  to the house, although the assured occasionally goes out of the house to get air or sunshine or to see his physician, or for some other necessary purpose.   We have been able to find but two cases construing the words "confined to bed," but we do not see any reason why the same principle should not be applied in construing these words.

In Bradshaw v. Am. Benevolent Assn., 112 Mo. App., 435, the court said:

"We would not, of course, hold  that this clause meant that a patient must spend every minute in bed for his right to indemnity to accrue; but the manifest purpose of the policy was not to indemnify for loss of time due to sickness unless the patient was bedridden in a substantial sense. We suppose the purpose was to insure against such illness only as would keep the patient in bed and thereby diminish the danger of claims founded on feigned or exaggerated illness. Now to hold that a person who could take a trip to Texas, another to St. Louis, and who was able to be up and around when he chose, was confined to his bed, would be to ignore one clause of the policy."

The question came before the same court again in Hayes v. Am. Benevolent Assn., 127 Mo. App., 195; in that case the jury had been instructed that the plaintiff might recover if he was bedridden in a substantial sense all of the time during the period of his sickness. Approving this instruction as the proper interpretation of the words "confined to bed," the court said:

"The words employed must be viewed in the light of common sense and there must be some reasonable construction placed upon the words "entirely and continuously" when used in connection with requiring a sick person to keep his bed, otherwise one who is in fact so enfeebled by sickness as to be unable to bear the fatigue of being dressed by an attendant, would forfeit his in-

surance by sitting propped up in a chair for a few moments or an hour, as a change from a reclining position upon the bed. Now in the case at bar, the plaintiff's proof tended to show he was confined to his bed each and every day during the several months of his sickness.   There were times when his dropsical affection rendered him unable to lie in bed, or elsewhere for that matter. He was compelled to sit up in order to breathe."

In the case at bar the insured had consumption. He was taken sick in June, 1910.   One witness who testified as to his condition prior to the time of his death in July 1911, said, "I don't think he was much worse the day he died than he was six months prior to that; he was just walking about virtually dead." There was other evidence that his condition was not so bad until a month or two before he died.

In lieu of Instruction 1 the court should have instructed the jury as follows:

1.   If the jury believe from the evidence that on and after January 5, 1911, Willie Williams was necessarily and continuously confined to bed and totally unable to follow his vocation, they should find for the plaintiff, in the sum of $300.00.

2.   The insured was necessarily and continuously confined to bed if his sickness was such as would reasonably confine a person continuously to bed or substantially so confine him, though he may have been up at times to get fresh air or for other purposes.

Judgment reversed and cause remanded for a new trial.