[Civ. No. 4974.   Third Appellate District.—December 14, 1933.]

NELLIE M. NELSON, Respondent, v. WASHINGTON FIDELITY NATIONAL INSURANCE COMPANY (a Corporation), Appellant.

J. F. Riley for Appellant.

Irwin T. Quinn for Respondent.

PULLEN, P. J.—While plaintiff herein was the holder of what is commonly called a health and accident policy with Washington Fidelity National Insurance Company of Illinois, she became ill.

It appears from the evidence that on January 28, 1932, plaintiff by reason of a paralytic stroke, was completely incapacitated and was taken to the Scotia Hospital at Scotia, Humboldt County, a regularly incorporated and licensed hospital, where she remained until the fourteenth day of February, 1932, when she was removed to her home, where she had remained up to and including the date of the trial of the action, confined to her home in bed. Appellant insurance company demurred to the complaint upon the grounds it did not state a cause of action under the contract of insurance, that the court had no jurisdiction of the subject of the action, and that the action was prematurely brought.

The policy which was issued to plaintiff December 15, 1930, and upon which she had made the necessary payments to keep the same in force, contained various provisions, but we are most vitally concerned with paragraphs D and E. The essential requirement of paragraph D is that the insured, in order to be entitled to the indemnity specified in the policy, must be necessarily, totally and continuously con-

fined to bed and visited at least once in every seven days by a legally qualified physician, by reason of sickness or illness, which illness was contracted and began during the life of the policy and after thirty days from the date of its initiation.

Paragraph E provides that in case the insured is necessarily, totally and continuously confined to the house and receives at least once in seven days, the attendance of a legally qualified physician, by reason of sickness or disease, which was contracted and began during the life of the policy and thirty days after the date of its inauguration, she would be entitled to one-half of the monthly rate provided in the preceding paragraph, for a period of not to exceed two months.

The complaint, among other allegations, sets forth the illness of the plaintiff and that by reason thereof she was confined in the hospital at Scotia, and was thereafter removed to her home in South Fork, Humboldt County, California, where she remained and was confined to her home and in bed; that she was totally disabled and unable to attend to her personal needs, was unable to move without the assistance of others, and that such condition would probably continue to exist in the future.

It is also alleged that written notice of the illness of plaintiff was given to the Washington Fidelity National Insurance Company, defendant herein, within ten days after the commencement of plaintiff's disability, to the authorized agent of defendant at the city and county of San Francisco, as provided in the policy, which written notice was given by and upon behalf of plaintiff as soon as it was reasonably possible for her to do so after becoming disabled. Also affirmative proof of loss was furnished by the plaintiff to defendant upon a form furnished by defendant for that purpose, on the fourteenth day of February, 1932.

It is further averred that plaintiff has furnished to defendant, every thirty days or thereabouts, a report in writing from her attending physician, fully stating the condition of the insured and the probable duration of disability. As to the latter fact the physician testified at the trial that plaintiff was still incapacitated and he could make no final report.

The demurrer interposed by defendant was over-ruled and the cause was tried, the appellant offering no evidence at the trial, the defense apparently being the insured was not confined to her bed and that the final proof of loss as required by the policy was a condition precedent to payment and had not been given. The evidence shows without contradiction that on January 28, 1932, the insured suffered a paralytic stroke and that she was confined to the hospital at Scotia for a time, and thereafter, and was at the time of trial, continuously confined to her bed, except as hereinafter stated.

Dr. C. C. Cottrell, her attending physician, testified that when he first saw her on January 28, 1932, she was paralyzed on the left side of her body and the right side of her face and was unable to walk or talk and was completely incapacitated; that he saw her once a week from the middle of February to the middle of May, at her home and that she was absolutely helpless; that during that period she was practically bedridden. From the middle of May to the date of the trial, November 2d, Dr. Cottrell continued to see Mrs. Nelson every week. When she was taken to his office she had to be carried and could not assist herself, it being necessary to lift her out of the machine and then place her in a wheel-chair.

After Mrs. Nelson was removed to her home from the hospital she had trained and practical nurses, all of whom testified she was paralyzed and was unable to take care of herself, and in order that she might be taken out into the sun a part of each day as a part of her treatment, she was placed in a wheel-chair, she being unable to assist herself in any way.

After the early part of April, Mrs. Thomas, who succeeded as nurse, testified that Mrs. Nelson was helpless and had to be lifted in and out of the bed and that for weeks at a time she would not be placed in the wheel-chair at all, but would be in the bed the entire day.

Upon occasions when it was necessary to take the patient to Eureka for treatment she would be carried in and out and placed in the car, "lifted as one would a baby".

Mrs. Thomas was succeeded by Mrs. Jennings, who had the care of plaintiff from August to the date of the trial. She testified that Mrs. Nelson was confined to her bed all

of the time, and that she was never off of the bed, except for the purpose of changing the linen of the bed; that when she was taken to Eureka for treatment she had to be carried in and out by two people, and at no time was she ever able voluntarily and unassisted to leave her bed.

From the foregoing we believe the court was fully justified in finding that the plaintiff was necessarily, totally and continuously confined to her bed by reason of her illness and disease.

In the case of *Holmes Protective Assn.* v. *Williams,* 151 Ky. 146 [151 S. W. 361, Ann. Cas. 1915A, 260], the court there said:

"Under a policy which provides that the insurer shall not be liable to a member for disability while convalescing from any disease and that it shall accept liability only for the actual time the member is necessarily and continuously 'confined to bed', insured can collect benefits for the sickness such as would reasonably confine a person continuously or substantially so confine him, though he may have been up at times to get fresh air, or for other purposes."

So, also, in the case of *Hays* v. *General Assembly American Ben. Assn.,* 127 Mo. App. 195 [104 S. W. 1141]: "The words employed must be viewed in light of common sense and there must be some reasonable construction placed upon the words 'entirely and continuously' when used in connection with requiring a sick person to keep his bed, otherwise one who is in fact so enfeebled by sickness as to be unable to bear the fatigue of being dressed by an attendant forfeits insurance by sitting propped up in a chair . . . as a change from a reclining position upon the bed."

█ It has long been an established rule that insurance policies are to be given that construction, if at all reasonable, which is most favorable to the insured rather than which is favorable to the insurer. In other words, policies of insurance are to be construed liberally in favor of the insured. (*Wells Fargo & Co.* v. *Pacific Ins. Co.,* 44 Cal. 397; *Granger* v. *New Jersey Ins. Co.,* 108 Cal. App. 290 [291 Pac. 698].)

"The provisions of all policies are always to be construed as to prevent a forfeiture if the language will reasonably permit of such a construction." (*O'Neill* v. *Caledonian Ins. Co.,* 166 Cal. 310 [135 Pac. 1121].)

Certainly this plaintiff who had a policy upon which she had regularly paid her premiums for protection against the misfortune that she suffered cannot be deprived of her rights now upon the ground that she was from time to time bodily removed from her bed. To hold otherwise would be not only unreasonable but far beyond the purpose and intent of the contract between the parties, and a very strained construction to place thereon.

Defendant also contends the court had no jurisdiction of the cause of action in that no final proof of loss was furnished by the insured to the company. Inasmuch as no evidence was introduced upon this point by defendant we rely upon the testimony as produced by plaintiff.

During the course of the trial the following took place:

"The Court: Mr. Riley, might I ask, do you question the sufficiency of the preliminary report?

"Mr. Riley: No, we are not questioning the sufficiency of the preliminary report.

"The Court: In other words you admit the reports and notices were all given according to the policy.

"Mr. Riley: We don't admit that; we admit they were given as alleged in the complaint, however.

"The Court: Is there any issue that the reports were not given in accordance with the terms of the policy?

"Mr. Riley: Well, I have never looked into that; I have simply taken the complaint as stating the facts and have not examined anything further than that; the proof was furnished, whatever the date was there, all the reports have come in regularly ever since."

A representative of the company, after receiving notice of the disability, wrote to the insured inclosing the final proof blank for use in presenting a claim.

Quoting from a letter by the claim's examiner for the defendant, we find: "Immediately upon recovery the statements of yourself, attending physician or your employer if any, are to be completed and forwarded to this office. In order that your claim may receive prompt attention all blank places should be properly filled in. If you should be disabled for more than one month please send us every thirty days a report from your attending physician stating your condition and the probable duration of your disability, as required by the policy."

It was established at the trial that plaintiff had not as yet recovered, but that each month her attending physician had reported to defendant as to her condition and the duration of disability.

It is the contention of defendant that under the terms of the policy no indemnity could be collected until after the furnishing of the proof of disability, which proof of disability could not be furnished until after recovery. The policy provides: "(4) Written notice of injury or of sickness on which claim may be based must be given to the Company within . . . ten (10) days after the commencement of disability from such sickness."

Dr. Cottrell, the attending physician, filed the preliminary report as soon as the blanks were obtained which was sent in some time prior to February 8, 1932.

Paragraph (L) of the policy provides: "If the insured is disabled by injury or sickness for more than thirty (30) days, he or his representative shall furnish to the Company every thirty (30) days, or as near thereto as may be reasonably possible, a report in writing from his attending physician or surgeon of his disability."

The record shows that the attending physician complied with this provision of the policy.

Paragraph (7) of the policy requires affirmative proof of loss be furnished the company within ninety days after the termination of the period for which the company was liable. Proof of loss was furnished on February 14th. On the date of trial an amendment to the complaint was allowed asking for additional indemnity from the date of the filing of the complaint until the date of the trial.

Under the facts of this case the liability of the company did not terminate until the insured had recovered from the illness alleged, sufficiently to leave her bed, and having filed claim of disability and monthly reports by the attending physician, no further action was required of the insured to entitle her to her monthly indemnity, so long as she remained in that condition.

It was not the purpose or spirit of the policy that the payment should be withheld until the insured should recover. Moreover, the policy provided the payments for illness were payable monthly as the policy was undoubtedly taken by the insured in order that there might be some

income to meet the expenses of any illness covered by the policy, she might suffer. It cannot be that the courts will assist defendant in maintaining a position that would defeat the very purpose for which the contract was procured. Respondent further maintains that no further forms of proof of loss were required; that the company by their policy agreed, upon receipt of notice of disability, they would furnish to plaintiff such forms as were usually furnished by it for filing proofs of loss, which they did.

"Any conduct on the part of the insurer which tends to create a belief in the mind of the claimant under the policy that notice need not be given or that proofs of loss will be unnecessary, operates as a waiver of a policy provision requiring such notice or proofs." (*Estrada* v. *Queen Ins. Co.,* 107 Cal. App. 507 [290 Pac. 525].)

The contentions of appellant are without merit.

The judgment and order of the court are affirmed.

Thompson, J., and Plummer, J., concurred.