[No. 5422.]
[No. 3080 C. A.]

JENNINGS v. THE BROTHERHOOD ACCIDENT COMPANY.

1. **Practice in Civil Actions—Insurance Claim—Time to Sue—Denial of Liability—Effect.**

Where an insurance company denies liability and expressly refuses to pay a claim, it thereby waives the right to insist upon a clause in the policy that no action shall be brought until three months after proof of claim, and the insured may sue at once.— P. 72.

**2.   Insurance—Sick Benefits—Policies—Provisions—Construction.**

The purpose of a stipulation in a policy for the payment of sick benefits, that no benefits shall become due unless notice in writing shall be received by the company within ten days from the commencement of total disability resulting from sickness, is, to enable the company to verify the statements of insured in order to protect itself from fraud, and the notice required is a condition precedent to a right of recovery, but the stipulation does not compel insured to determine at his peril when actual disability commenced.—P. 74.

**3.   Same.**

Under a policy for the payment of sick benefits, stipulating that no benefits should become due unless notice was received by the company within ten days from the commencement of total disability resulting from sickness, the insured became indisposed and quit work about December 20th, but, after laying off two or three days, he went to work again, and about January 1st following he was again indisposed, and he did not go to work, but kept on getting worse until about the 20th day of the month, when he became totally disabled from doing any work, and on the following day notice was sent to the company, stating that insured's disability began about January 1st, but the evidence showed that neither the insured nor his physician realized that the former's illness, until about January 20th, was sufficiently serious from its inception to entitle him to benefits under the policy.  Held, that the notice of insured's disability was served within the time required.—P. 75.

**4.   Same.**

Policies of insurance, like other written contracts, are to be considered and construed with a view to carrying out the intention of the parties.—P. 76.

**5.   Same.**

The intention of the parties to a contract of insurance is indemnity, and this intention is to be kept in view and favored in construing its provisions; and to this end it must be construed liberally in favor of the insured, and strictly against the insurer. —P. 76.

**6.   Same.**

Under a policy for the payment of sick benefits—providing that a total disability should be continuous, complete and total, requiring absolute necessary confinement to the house for not less than fourteen consecutive days—for a portion of the period claimed, the insured was out nearly every day when the weather was favorable by advice of his physician, and, while he was not

actually confined to his bed on account of sickness during that time, he was not able to perform any labor or pursue his usual calling. Held, that the insured was incapacitated within the meaning of the policy providing for the payment of benefits to insured while incapacitated for performing labor.—P. 76.

7. Same.

Under a policy for the payment of sick benefits, stipulating that no disability should constitute a claim for indemnity on account of any sickness the nature of which was incapable of direct and positive proof, the insured testified that he thought that his illness was caused by a cold and taking another cold on top of that; his physician stated that insured had contracted a cold which had settled on the vocal cords and brought about a condition of chronic laryngitis, but, on account of the fact that he had lost his strength and was unable to take even moderate exercise, he thought there was something else ailing him; and the evidence conclusively established that insured was ill and totally incapacitated for performing labor. Held, that insured satisfied the requirements of the stipulation, and was entitled to the sick benefits.—Pp. 76, 77.

8. Contracts—Construction.

In construing a contract, the first point to ascertain is what the parties thereto meant, intended, and understood, as determined by the words employed; and, as an aid in this respect, the object of the parties in making the contract may be taken into consideration.—P. 77.

9. Insurance—Sick Benefits—Policy—Construction.

The purpose of a stipulation in a policy for the payment of sick benefits, that no disability shall constitute a claim for indemnity on account of any sickness the nature of which is incapable of positive proof, is to protect against fraud by preventing insured simulating illness; but it does not impose on him the burden of definitely naming the illness or its origin or cause, and, when he furnishes evidence of a physical condition as the result of illness which incapacitates him for labor, he satisfes the provision.—P. 77.

*Appeal from the County Court of Boulder County.*

*Hon. Junius Henderson, Judge.*

Action by John Jennings against The Brotherhood Accident Company. From a judgment of non-

suit in the county court on appeal from a justice of the peace court, plaintiff appeals.

*Reversed and remanded.*

Messrs. MILER, BARND & AFFALTER (Mr. ERNEST L. WILLIAMS, of counsel), for appellant.

Mr. OSCAR A. JOHNSON, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellant held a policy of insurance issued by the appellee. This policy provided for payment to the insured of a stipulated sum per week for a specified time during disability resulting from sickness. Under this policy appellant brought suit before a justice of the peace to recover from the appellee the benefits to which he claimed to be entitled and obtained judgment, from which the defendant company appealed to the county court, where it was tried *de novo*. At the conclusion of the testimony on the part of plaintiff, a motion for nonsuit was interposed by the defendant, and sustained. From this judgment the plaintiff appeals. The motion for nonsuit was based upon the following grounds:

(1) That the suit was prematurely brought;

(2) That notice of plaintiff's disability was not served within the time required;

(3) That the plaintiff was not confined to the house for fourteen consecutive days, as required by the terms of the policy, to entitle him to sick benefits;

(4) That plaintiff did not prove from what disease he was suffering, and was unable to prove any particular disease.

In order to determine whether or not the judgment of nonsuit based upon these grounds was correct, it becomes necessary to briefly review the evidence bearing on the questions raised by the motion.

The policy provides that "No legal proceedings for recovery under this certificate shall be brought until the expiration of three months after receipt by the company of acceptable proofs of loss." Within less than three months after proofs of plaintiff's illness had been received by the defendant company, he commenced suit to recover the benefits to which he claimed to be entitled. It appears from the testimony that when he first notified the defendant of his illness, it denied all liability on the policy; and that when he furnished the proofs of such illness, the company again refused to recognize that it was under any obligation to him whatever on the policy in question. Having denied its liability, and having expressly refused to pay plaintiff's claim, the defendant waived its right to insist that under the terms of the policy quoted no action should be commenced against it until three months after the receipt of plaintiff's proof of claim.—*Cala. Ins. Co. v. Gracey,* 15 Colo. 70; *Preferred Accident Ins. Co. v. Fielding,* 35 Colo. 19; *U. S. Casualty Co. v. Hansan,* 20 Col. App. 393; *Modern Brotherhood of America v. Cummings,* 94 N. W. (Neb.) 145.

The provision of the policy invoked by the defendant is for its benefit, as stated in substance in *Cala. Ins. Co. v. Gracey, supra,* in order to afford it an opportunity to investigate the causes of loss and verify the proofs thereof, and also to give it an opportunity for making financial arrangements to discharge its obligation; but where, as in this instance, it repudiates all liability to the insured upon its policy, he may bring action at once upon being notified by the company that his claim will not be paid.

The policy provides that: "In the event of * * * sickness for which, directly or indirectly, any claim may be made under this certificate, no benefits will become due or be paid, nor will the com-

pany be liable therefor, unless notice in writing shall be received at the home office of the company  *   *   * within ten days from the commencement of total disability resulting from sickness, which notice must be signed by the certificate holder or his attending physician or beneficiary, stating full particulars, giving occupation of the certificate holder at the time, together with the number of his certificate, and his address."

The insured became indisposed and quit work about December 20th.  He says that at this time "I laid off for two or three days, got to feeling pretty good again, and I went back to work, and about January the first, 1903, or that evening, or December 31st, 1902, I went home, hardly able to walk home. I did not go to work at all in the morning, thinking a few days' rest would fetch me out all right; talked to the doctor and he advised me to lay-off a little bit."

According to his statements, from this date he did little or no work, and kept on getting worse until about the 20th of the month, when he was totally disabled from doing any work whatever.  His physician testifies that when he first prescribed for him, which was about the first of January, he thought he was suffering from a cold, with some trouble of the vocal cords; that at this time he did not regard his patient's illness as at all serious; that a few days later he observed he was not improving, and advised him to refrain from work for three or four days, but that he did not improve; that about the 20th of the month he came to the conclusion that his diagnosis was wrong, and that he was more seriously ill than he anticipated, and that although he did not realize it at first, the insured was really incapacitated for work from the first of January, or shortly after he first began to treat him.  At the request of the in-

sured the doctor notified the company of his patient's illness, placing the date of his disability from about the first of January. This notice was dated January 21st, and received by the company five days later. In the proof subsequently submitted by the insured to the company he places his disability as commencing about January first. The company refused to recognize any liability to the insured because, according to the notice of his disability, he had failed to notify the company within ten days from the date it began.

The purpose of the provision of the policy invoked by the defendant and above quoted, was to enable it to verify the statements made by the insured, in order to protect itself from fraud, and the notice thereby required is a condition precedent to a right of recovery under the policy, but it does not compel an insured to determine at his peril when actual disability commenced. According to the policy it is not every illness for which benefits are paid, but only that of such a nature as incapacitates the insured from following his usual avocation; so that it is only from the date disability caused by illness occurs that the time for notice begins to run. According to the testimony of the insured and his physician, it appears that neither thought the illness from which the former was suffering was at all serious, or of such a character as to incapacitate him for labor, except as a matter of precaution, until about the 20th of January, when, for the first time, the physician realized that his patient was really seriously ill, and as a fact, had been incapacitated for work since about the first of the month. In such circumstances, the time for giving notice required by the condition of the policy under consideration did not commence to run until the insured realized that his illness was sufficiently serious to prevent him from

following his usual avocation.—*U. S. Casualty Co. v. Hanson, supra; Rorick v. Ry. Officials & Employees Acct. Assn.,* 119 Fed. 63; *Grant v. N. American Cas. Co.,* 93 N. W. (Minn.) 312; *Odd Fellows' F. A. Assn. v. Earl,* 70 Fed. 16.

True, it was stated in the notice to the company, and also in the proof submitted, that the insured's disability began about January 1st, or more than ten days previous to the receipt of the notice by the company, but that is not material, when it appears from the evidence that this statement was made because neither the insured nor his physician realized until about January 20th that his illness was sufficiently serious from its inception to entitle him to benefits under the policy of insurance issued by the defendant company. The insured was only entitled to sick benefits from the date his disability began, and he could not honestly make any claim against the company under the policy until he honestly believed he was disabled for work on account of his illness, and merely becaue he and his physician made a mistake with respect to his condition in the early stages of his illness, does not preclude his recovery.

The policy further provides that: "A disability, to constitute a claim for indemnity for sickness only, shall be continuous, complete and total, requiring absolute, necessary confinement to the house for not less than fourteen consecutive days. * * *" It appears from the testimony that during a considerable portion of the period for which plaintiff claimed sick benefits, he was out nearly every day, by advice of his physician, when the weather was favorable; and that he was not actually confined to his bed on account of sickness during that time. It does appear, however, that during this period he was not able to perform any labor, or pursue his usual calling. Policies of insurance, like other written

contracts, are to be considered and construed with a view to carry out the intention of both parties.— *Goodrich, Admr., v. Treat,* 3 Colo. 408; *State Ins. Co. v. Taylor,* 14 Colo. 499.

The intention of the parties to a contract of insurance is indemnity, and this intention is to be kept in view and favored in construing its provsions. Having indemnity for its object, a policy of insurance is to be construed liberally to that end, and for this reason conditions and provisos therein will be strictly construed against the insurers, because their object is to limit the scope and defeat the purpose of the principal contract.—*Providence L. S. I. Society v. Cannon,* 103 Ill. App. 534; 1 May on Insurance (4th ed.), § 174.

The evident purpose of the policy, construed as a whole, was to indemnify the insured from loss occasioned through illness, by providing for the payment to him of certain benefits while incapacitated for performing labor. When so incapacitated he was disabled within the meaning and intent of the policy. It was not necessary that he be helpless, or that he remain in bed, or in the house, during such illness, when it might advance his recovery and correspondingly relieve the company from its obligations to him, if he should take some exercise and expose himself to the healing influences of sunshine and fresh air, provided he is entirely incapacitated for work or business on account of his illness.— *Mutual Benefit Assn. v. Nancarrow,* 18 Col. App. 274.

The policy further provided that: "No disability shall constitute a claim for indemnity on account of any sickness the nature of which is unknown or incapable of direct and positive proof, * * *."

Plaintiff testified he thought that his illness was caused by a cold, and, to use his own language:

"Then, I suppose I took another cold on top of that." He further states, in effect, that neither he nor his physician could name it definitely. His physician stated that he had contracted a cold, which had settled on the vocal cords and brought about a condition of chronic laryngitis, but on account of the fact that he had lost his strength and was unable to take even moderate exercise, he thought there was something else ailing him. That plaintiff was ill, and totally incapacitated for performing labor, was established without dispute by the testimony, although it does not appear with certainty what disease he was suffering from.

In construing a contract, the first point to ascertain is what the parties thereto meant, intended and understood as ·determined by the words employed, and, as an aid in this respect, the object of the parties in making it may be taken into consideration.—*C. F. & I. Co. v. Pryor*, 25 Colo. 540. The object of the insured was to provide for an indemnity in case of illness which incapacitated him for labor. The purpose of the provision in the policy under consideration was to protect the company against fraud by preventing the insured simulating illness. It does not impose upon the insured the burden of definitely naming the illness on account of which a claim is made, or its origin, or cause, but that he must furnish evidence of a physical condition as the result of illness which incapacitates him for labor. When he does this he satisfies its purpose—*i. e.*, that he is not simulating illness, and at the same time establishes a fact necessary to entitle him to indemnity. Plaintiff had lost his strength and was unable even to take a moderate degree of exercise. Extreme weakness was his physical condition, and precisely what particular disease may have caused it is not material, when it was established beyond question that phy-

sical weakness, resulting from illness, incapacitated him for work or business.

It is apparent from the testimony bearing on the grounds upon which the motion for nonsuit was based, that plaintiff made out a *prima facie* case, and hence it follows that the trial court erred in sustaining the motion.

The judgment of the county court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.