R. H. MUSSER, Administrator of the estate of JAMES
H. WISER, Respondent, v. GREAT NORTHERN
LIFE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals.   December 1, 1924.

1. **EVIDENCE: Statements Made by Insured and His Physician in
   Proof of Claim as to Time of Insured's Confinement to House Held
   Not Conclusive.** Statements in proof of claim made by insured and
   his physician as to dates between which insured was confined to the
   house, *held* that statements showed that neither knew legal mean-
   ing or effect of insurance contract phrase "necessarily and con-
   tinuously confined to the house," and as the proof of claim other-
   wise disclosed that insured was confined within meaning of phrase
   for much longer time than dates given therein, and that such
   statements having been thereby contradicted or explained in that
   particular, the proof of claim cannot be regarded as conclusive on
   insured, whether proof of claim was introduced after or before in-
   sured closed his case.

2. **INSURANCE: Evidence Held to Show Insured Confined to House
   Within Meaning of Policy.** In an action on a policy of health in-
   surance, evidence *held* to show insured was confined to house
   within legal meaning of phrase used therein, for full period of time
   required, though taken by his brother upon doctor's direction
   about twice a month to doctor's office for treatment.

Appeal from the Circuit Court of Clinton County.—*Hon.
Guy B. Parks,* Judge.

AFFIRMED.

*Pross T. Cross* and *R. H. Musser* for respondent.

*W. S. Herndon* for appellant.

TRIMBLE, P. J.—In this action on a policy of health
insurance, no question arises over the validity of the
policy nor as to defendant's liability in some amount,
but the issue is as to what amount. Insured sued, claim-

ing that under the policy he was entitled to $25 weekly indemnity for fifty-two weeks, aggregating $1300; but defendant insisted that he was entitled to only $25 per week for six and two-sevenths weeks and $10 per week for ten days thereafter, aggregating only $257.14, and sent him a draft for that amount, which he refused to accept and promptly returned. The defendant deposited said $257.14 at the trial. The verdict of the jury, however, was for the full amount claimed by plaintiff, and judgment being rendered for that amount, defendant has appealed.

The controversy arises out of two paragraphs in the policy relating to the indemnity to be paid. One, that under which plaintiff claims, providing that for total disability "while confined to House" defendant would pay a weekly indemnity of $25 not exceeding fifty-two weeks during which insured should "independently of all other causes be necessarily and continuously confined to the house and wholly disabled and prevented by bodily disease . . . from performing any and every kind of duty pertaining to his occupation." The other paragraph, on which defendant relies, provides for an indemnity of $10 per week for not exceeding ten weeks, in case insured should be "continuously wholly disabled and prevented from performing any and every kind of duty pertaining to his ocupation, but shall not be necessarily confined to the house, or for a like period of total disability following a period of confinement to the house."

There is no question but that insured was totally disabled for the entire period of fifty-two weeks; the question is whether, within the meaning of the policy, he was confined to the house that length of time.

The policy was issued March 2, 1917, and at that time and up to March 18, 1922, insured was a farmer and feeder, strong and active and able to attend to his work. But on said last-named date he suffered a stroke of apoplexy and became paralyzed and almost completely so, from which he continued to suffer up to and after the trial

218 Mo. App.—41.

and to the time of his death which occurred thereafter in the spring of 1924, the trial and judgment having been had and obtained on January 9, 1924.

The evidence in plaintiff's behalf tends to show that although strong and well up to March 18, 1922, the date of his stroke, plaintiff was never thereafter able to do anything, not being able to care for or feed himself, and under the care of a physician; that he could not put on his clothes, but someone had to do that for him; that from March 18, 1922, to March 18, 1923, a period of fifty-two weeks, he had to be taken care of "just like you would a kid." A large portion of the time he had to be raised up in bed as he could not move himself. The rest of the time he could get up, but he could not dress nor feed himself, but had to have the help of others in these matters; that the only time he was ever out of the house during the year above mentioned was when his brother would take him out in the effort, by giving him a little air and exercise, to benefit him in that way, and on these occasions when the weather was nice he would be bundled up and taken in an automobile, about twice a month, to the doctor's office for treatment; all of which was done at the doctor's direction and suggestion that it would not hurt him and might prove a benefit but that he must never be left alone; that aside from these occasions he was never out of the house during the fifty-two weeks or at any time between the date of his stroke and the trial.

On the occasion of these visits to the doctor's office he had to be helped into and out of the car and up the steps into the doctor's office and when in there he had to have help, the doctor saying insured "couldn't handle himself to amount to anything." The doctor further testified that at no time after the stroke was the patient ever able to do any labor; that soon after his stroke his condition became chronic and he had to be watched at all times; that he could at times stand for a short time and sit down a little, but tired quickly, and would fall

down easier than he could sit, and had to be helped from his chair to bed or *vice versa.*

There was no evidence to contradict this except that in the "Attending Physician's Final Statement" forming part of insured's "Proof of Claim," furnished the next day after the expiration of the fifty-two weeks, and produced by defendant at the trial, was the doctor's answer to the question, "Between what dates was he necessarily confined to the house?", viz: "From March 18th to 1922 April 30," and the physician's answer to the question, "Confined to his bed?", viz: "From March 18th to April 23;" and his answer to the question, "Give all the dates on which he visited you at your office?", viz: "Every two weeks for a year since April 30, 1922."

The defendant also offered in evidence the statement contained in plaintiff's "Proof of Claim" wherein, in answer to the question, "Were you confined to the house? If so, between what dates?", he stated "From Mar. 18, 1922, to Apr. 30, 1922." The statement, in answer to the question, "Upon what date were you first able to leave the house?", further said "Can leave house for short periods during day brother always with me" and that he was never able to go to his place of business or to attend to any part of his work.

Upon receipt of plaintiff's proof, the Secretary of the Company immediately acknowledged receipt of same and, inclosing draft for $257.14, said in his letter that from the claim papers we "note that you were confined to the house from March 18, to April 30, 1922, and that you were totally disabled but not confined to the house thereafter. We are allowing claim exactly as presented in your proofs." To this insured's attorney replied saying the proofs showed liability of $1300 and demand was made for that amount, but payment thereof was refused.

At the close of all the evidence, defendant prayed the court to direct the jury to find for defendant, and when this was overruled, defendant prayed for a directed verdict in plaintiff's favor for $257.14. This was

likewise. overruled and the case submitted, after which the jury returned a verdict for $1300 as heretofore stated.

It apparently is the contention of appellant that the statements of the physician and of the insured in the latter's proof are admissions, and since insured was unable to be present and testify at the trial, those statements were not contradicted or explained and hence became conclusive. We cannot agree to this. The statements contained in the "proof of. claim" merely show that insured and his physician did not know the legal meaning and effect of the phrase "necessarily and continuously confined to the house" while the "Proof of Claim" otherwise discloses that very likely he was for the full period of fifty-two weeks confined to the house within the legal meaning of that phrase as used in such policies. Moreover, the evidence of the doctor, as well as all of the other evidence in the case, shows what were the facts in regard to the matter and when such facts, if found to be true, disclose that insured was confined to the house within the legal meaning of that phrase as used in the contract, for a time longer than the dates given in the proof of claim, then such claim has been contradicted or explained in that regard, and the proof of claim can in no sense be regarded as conclusive on the plaintiff. And this too without regard to whether the proofs of claim were introduced after or before insured had closed his case.

It only remains to be seen whether the facts as offered in evidence tend to show that insured was confined to the house for the full period of fifty-two weeks as that phrase is legally understood in insurance policies. We think that unquestionably they do. [Ramsey v. General Accident, etc., Ins. Co., 160 Mo. App. 236, 241, 242 and cases cited; Home Protection Assn. v. Williams, 151 S. W. 361, 362; Dulaney v. Fidelity, etc., Co., 106 Md. 17; North v. National Life, etc., Ins. Co., 231 S. W. 665; Bass

v. Pioneer Life Ins. Co., 227 S. W. 639; American Life, etc., Ins. Co. v. Nirdlinger, 113 Miss. 74.]

It follows, therefore, that the judgment should be affirmed, and it is accordingly so ordered. All concur.