## FEDERAL SURETY CO. v. WAITE. (No. 11822.)*

Court of Civil Appeals of Texas. Fort Worth. June 4, 1927.

Rehearing Denied July 2, 1927.

1. Insurance ⟨⟩525—Insured totally incapacitated from doing usual work, though leaving home during illness to visit doctor and for walks could recover under policy providing for continuous confinement to house.

Under insurance policy providing for payment to insured during time when insured shall be totally and continuously disabled by illness from performing all duties of occupation and shall be strictly and continuously confined within house under physician's care, insured was entitled to recover for loss of time occasioned by sickness totally incapacitating her from performing usual work, though she left home three times a week for purpose of seeing her doctor and walked around outside on doctor's advice.

2. Insurance ⟨⟩525—Requirement that insured be continuously confined in house to recover for total disability held evidentiary and not prerequisite to recovery.

Under policy providing for payment of sick benefits in case of total disability from performing usual work, requirement that insured shall by reason of illness be strictly and continuously confined within house under care of qualified physician is evidentiary only of total incapacity and is not a prerequisite to recover for total incapacity.

3. Insurance ⟨⟩635—Petition under insurance policy to recover for total incapacity held sufficient without alleging confinement to home during illness.

Petition for recovery under insurance policy, alleging total loss of time and incapacity to labor during sickness, held sufficient without alleging that by reason of sickness insured was confined to her home during period for which recovery was sought.

4. Appeal and error ⟨⟩193(1)—Sufficiency of petition cannot be reviewed on appeal, where not excepted to, and record shows no ruling on general demurrer was requested or had.

Where insurer sued on policy presented, no special exception to insufficiency of petition and record did not show ruling on general demurrer was requested or had, and there was no assignment to any action of court relating thereto, sufficiency of petition which in all events would be sufficient to bring insured un-

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction November 9, 1927.

der some clause of policy cannot be reviewed on appeal.

### On Motion for Rehearing.

**5. Contracts ⊙⇒147(3)—Contract sued on is to be construed as whole to determine parties' intentions, in absence of fraud, accident, or mistake.**

In absence of fraud, accident, or mistake, parties are sued in accordance with terms of contract construed as whole to discover true intent of parties.

**6. Insurance ⊙⇒525—Recovery for total incapacity shown without dispute cannot be reversed for failure to establish evidentiary fact of confinement to house stipulated in policy.**

Under policy providing for sick benefits during total incapacity and continuous confinement in house under care of physician, where facts of total incapacity and loss of time are established without showing continuous confinement to home, reversible error cannot be predicated on insured's failure to prove evidentiary fact of confinement to house.

Appeal from Tarrant County Court; P. W. Seward, Judge.

Suit by Sadie B. Waite against the Federal Surety Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Burgess, Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for appellant.

Frank R. Graves and W. L. Coley, both of Fort Worth, for appellee.

CONNER, C. J. The appellee, Sadie B. Waite, instituted this suit against the appellant, Federal Surety Company, to recover upon its insurance policy No. A-21717. She alleged that by the terms of the policy the company had agreed to pay the sum of $100 per month for such time as plaintiff should be incapacitated from performing the usual duties of her vocation, and the sum of $50 per month for such time as plaintiff might be partially incapacitated from performing such duties on account of any illness. She specifically averred:

"That while said policy was in full force and effect plaintiff became ill and wholly incapacitated from performing the duties of her vocation and continued such total and partial incapacity for a period of seven months and that by reason thereof defendant became liable to plaintiff and promised and agreed to pay plaintiff the sum of $600."

The appellant company answered by a general demurrer and a general denial and the following special answer:

"Specially answering defendant would show to the court that it has offered to pay plaintiff and has tendered to her, and her attorney, all that she is entitled to under any policy written by this defendant, for plaintiff; that defendant has tendered to plaintiff the sum of $146.44, and here now tenders into court the said sum of $146.44, in full settlement of its liability to plaintiff and under the policy described in plaintiff's petition as its No. A-21717."

The trial was before the court without a jury, and the court found that appellee was entitled to indemnity under the terms of the policy at the rate of $100 per month beginning April 5, 1925, and ending September 1, 1925, four months and twenty-five days, aggregating the sum of $483.33, together with interest at the rate of 6 per cent., amounting to the further sum of $32.50. From the judgment so rendered, the insurance company has appealed.

The issuance of the policy, payment of premiums, etc., as alleged by plaintiff, are not disputed; the only controversy being whether the appellee, by her testimony, has brought herself within the terms of the section of the policy upon which the judgment rests. The policy by its terms declares that it is given against loss of life, limb, etc., resulting from a purely accidental event, and—

"against loss of time from sickness which is contracted and begins not less than fifteen days after the date of this policy—all in the manner and to the extent hereinafter provided.

"Part VIII. *Indemnity for Illness.*—In the event that the insured while this policy is in force shall suffer from any bodily illness, or disease, which is contracted and begins during said time, the company will pay for loss of time necessarily resulting therefrom as follows:

"A. Said monthly illness indemnity for the period of time, not exceeding twenty-four months, during which the insured shall be totally and continuously disabled by such illness, or disease, from performing each and every duty pertaining to his occupation, and shall also by reason of such illness be strictly and continuously confined within the house and therein be under the regular care of a legally qualified physician.

"B. One-half said monthly illness indemnity will be paid for such period, not exceeding two months, as the insured by reason of a nonconfining sickness or by reason of convalescence from a confining sickness shall be totally and continuously disabled from performing each and every duty pertaining to his occupation and shall also be under the regular care of a legally qualified physician, though not confined within the house."

The only evidence offered on the trial was that of plaintiff, consisting of the policy from which we have quoted, and of her own testimony. In substance, she testified that she was a stenographer and had applied for and received the policy of insurance from which we have quoted and paid the premium thereon; that she became ill on April 5, 1925, while the policy was in force; that her illness was a breakdown from overwork, and continued from April 5th until the 1st of September, during which time she was not able to do any work; that the first physician she had with her was Dr. Chase; that "I was incapacitated from performing any of my

work of my usual vocation from the 5th of April until the 1st of September. I was confined at home; I was under the care of a physician until the 4th of August, anyway." She further testified that she was in the hospital one week; that after the 1st of September she started to work, but was not able to do more than 50 to 75 per cent. thereof; that she had never been able to go back and do all of her work as she did before her illness.

On cross-examination she testified:

"The doctors removed my tonsils, too; I was at the hospital one day for that; I was there an additional week afterwards. I was never visited by doctors at my house. The doctors wouldn't come to my house to see me. I went to see the doctor. I went to the doctor's office about once a week, and after I left the hospital I went back to the hospital three times a week for two months for treatment. I left the hospital June 4th. Prior to that time I went to see Dr. Chase about once a week, and then from June 4th I went to see Drs. Horn & Ott three times a week for two months. I was in the hospital while I had my tonsils removed, and then my sister took me home and waited on me at my room, and when my sister left I went back to the hospital and stayed there a week. I had to go to town to make these trips to the hospital. After a little while I went to town for other things. After a while the doctor told me to exercise. Dr. Chase told me that, while I was being treated by him, I did go out and walk around a little bit—not very much. Then after I came out of the hospital I was going to town three times a week to see the doctor. I did not go to town for other things; that is, only to change cars. I had to go to town to change cars to go to the hospital. I didn't do any running around town. I didn't make a trip to Dallas during that time. When I came to town, if I had a prescription, I would have it put up, and I stopped to eat my lunch—change cars right near there where the café was, and where the drug store was. I didn't go around any of the department stores; not until later. As I got my strength I went around more. I began to get stronger when I left the hospital, but I didn't run around town when I first left the hospital. I can't tell you just what date. I had made other errands, but when I first left the hospital I didn't run around town any. I left the hospital the 4th of June. Prior to the time I left the hospital I had gone out on the advice of Dr. Chase. I had gone out walking around prior to the time I went to the hospital. And I had gone to see Dr. Chase and visit him in his office."

It was admitted that the defendant had tendered to the plaintiff and into court the sum of $146.44.

The fact that appellee was wholly incapacitated during the period alleged from performing each and every duty pertaining to her occupation is not disputed, but appellant's contention is that the evidence fails to show that she was "strictly and continuously confined within the house and therein be under the regular care of a legally qualified physician," and hence is not entitled to recover under section A of the policy, quoted above, but is only entitled to recover under the terms of section B of the policy, as quoted. In compliance with which and in satisfaction thereof, its tender of payment had been made.

On the contrary, appellee's contention is to the effect that the policy construed as a whole protected her from loss of time resulting from illness so that she could not perform the duties pertaining to her occupation, and that the reason and spirit of the contract is that, for the premium paid, if appellee became totally and continuously disabled, by reason of illness and disease from performing her duties as stenographer, she should be paid for that time, by the appellant, $100 per month. In support of appellant's contention, the following authorities are cited: Cooper v. Phœnix Accident & Sick Benefit Ass'n, 141 Mich. 478, 104 N. W. 734; Dunning v. Mass. Mut. Acc. Ass'n, 99 Me. 390, 59 A. 535; Bradshaw v. Am. Benevolent Ass'n, 112 Mo. App. 435, 87 S. W. 46; Sawyer v. Masonic Protective Ass'n, 75 N. H. 276, 73 A. 168; Pirscher v. Casualty Co., 131 Md. 449, 102 A. 546, L. R. A. 1918B, 996; Olinger v. Mass. Protective Ass'n (Mo. App.) 278 S. W. 86; Rocci v. Mass. Acc. Co., 222 Mass. 336, 110 N. E. 972, Ann. Cas. 1918C, 529; Bucher v. Great Eastern Casualty Co. (Mo. App.) 215 S. W. 494.

In behalf of appellee, we have considered the following authorities; So. Surety Co. v. Diercks (Tex. Civ. App.) 250 S. W. 755; Musser v. Great Northern Life Ins. Co., 218 Mo. App. 640, 266 S. W. 325; Jennings v. Brotherhood Acc. Co., 44 Colo. 68, 96 P. 982, 18 L. R. A. (N. S.) 109, 130 Am. St. Rep. 109; Mutual Ben. Ass'n v. Nancarrow, 18 Colo. App. 274, 71 P. 423; Scales v. Masonic Protective Ass'n, 70 N. H. 490, 48 A. 1084.

The cases cited do not seem to be entirely harmonious. Those cited in behalf of appellant adopt a more literal construction of the terms of the policy. The general trend of those cases may be illustrated by the cases of Cooper v. Phœnix Acc. & Sick Benefit Ass'n, by the Supreme Court of Michigan, Bradshaw v. Benevolent, Ass'n, and Olinger v. Mass. Protective Ass'n, all cited above.

The case last mentioned was one in which the policy provided that, if the plaintiff suffered from disease resulting in continuous total disability for at least five days, requiring the attendance of a physician, and confining the insured within the house or hospital, the defendant would pay the insured $25 per week continuously during such disability, and that, if plaintiff should be totally disabled by disease for at least five days, but not confined within the house or hospital, defendant would pay for a period of such disability, not exceeding 26 weeks, $12.50 per week. The plaintiff claimed total disability confining him in the house and requiring the

regular and personal attendance of a licensed physician from October 16, 1922, to December 20, 1923. He testified, in substance, that his sickness incapacitated him from performing his usual labors, and that he remained in the house except when he would go to Kansas City for treatment and when he would walk up town, from his home in Marceline; that this was a distance of four blocks; that between treatments while in Kansas City he would "walk a little while and come back"; that he felt better by taking a little exercise; that he would walk a couple of blocks and be tired; that he at all times was able to walk around a little and go outside of the house except when he was down for twelve days at home, after which he recuperated and went back to the doctor; that his physician advised him to keep out of doors as much as possible. The court, in ruling upon the case, stated that from the testimony it appeared that, except for the period of twelve days when the plaintiff was confined to his home, he was able to be out unassisted, and at all times to walk around a little outside of the house, make trips to Kansas City on the train during the entire period of his illness; that he was able to go to the doctor's office, and none of his physicians treated him at his home. He reported to the company that he had not been confined to the house; that he felt better when he exercised; and there was no evidence that he was ever in the hospital. The court, among other things, said:

"Of course, the clause concerning confinement to the house does not mean that plaintiff must spend every minute in the house in order to recover. But in order to be entitled to $25 per week indemnity, he must have been confined to the house in a substantial sense. [Citing cases.] * * * It is apparent that plaintiff was not confined substantially to his home in the sense used in the policy."

In the case of Bradshaw v. Benevolent Association, the policy provided for an indemnity "should the member, by reason of sickness or disease, be wholly incapacitated from transacting any and every kind of work or business, and as a result thereof be entirely and continuously confined in bed and under the charge and subject to the personal calls of some regular qualified physician." The plaintiff in that case had a nervous breakdown or attack of neurasthenia. He was under the attention of a physician throughout his sickness, and wholly incapacitated to attend to any business, but was never, even when at his worst, confined to his bed. It is true, he rested occasionally in bed during the daytime, but spent most of the hours of the day out of doors. In this he acted under the advice of his physician, who thought it was better for him to be in the open air than in the house. Plaintiff testified that during the month of June, when he was worse than at any other time, he went to St. Louis to consult a physician, and in May took a trip to

Texas and remained ten days. He was never confined to his bed constantly, but sometimes stayed in bed two or three days out of a week. The court held that the evidence failed to bring the plaintiff within the requirement that he should be confined to his bed; that to so hold would be to ignore one clause of the policy.

In the case of Sawyer v. Masonic Protective Ass'n, by the Supreme Court of New Hampshire, it was held that a plaintiff shown to have been totally disabled for labor, but able to walk a quarter of a mile to a barber shop, did not bring himself within the provision of a benefit certificate, providing that a disability, to constitute a claim for sickness, should require absolute, necessary, and continuous confinement to the house for not less than 14 days, etc.

In volume 4 of Cooley's Brief on the Law of Insurance, p. 3293 it is said that policies promising indemnity for disability due to an injury or disability due to ill health sometimes require that the disability shall be such as to necessitate confinement to the house. It is said that such a condition is valid, citing the cases of Dunning v. Mass. Mut. Acc. Ass'n, 99 Me. 390, 59 A. 535, and Bishop v. U. S. Casualty Co., 99 App. Div. 530, 91 N. Y. S. 176. Following the statement, however, are numerous cases in which the construction of such provision in policies are not so rigid.

Turning to the cases cited in behalf of appellee, we find that in the case of Scales v. Masonic Protective Ass'n, 70 N. H. 490, 48 A. 1084, by the Supreme Court of New Hampshire it was held, quoting from the headnotes, that:

"Where a benefit certificate provided that plaintiff should receive sick benefits if he were sick so as to be 'totally disabled, and absolutely, necessarily, and continuously confined to his house,' he was entitled to such benefits where he was totally disabled by sickness, but remained in the open air much of the time, under direction of his physician, since defendant's liability depended on the disability of the insured, and not on his confinement to the house, which was merely an evidentiary fact, and not a condition precedent."

In the case of Mutual Ben. Ass'n v. Nancarrow, by the Colorado Court of Appeals, 18 Colo. App. 274, 71 P. 423, it was held that one was confined to the house within the provision of an accident policy when by reason of sickness there was complete and enforced withdrawal from business and work, though he may occasionally be able to leave the house and take the car to his doctor's office.

In the case of Jennings v. Brotherhood Accident Co., 44 Colo. 68, 96 P. 982, 18 L. R. A. (N. S.) 109, 130 Am. St. Rep. 109, by the Supreme Court of Colorado, the policy sued on provided that:

"A disability, to constitute a claim for indemnity for sickness only, shall be continuous,

complete and total, requiring absolute, necessary confinement to the house for not less than fourteen consecutive days.".

It appears from the testimony that during a considerable portion of the period for which plaintiff claimed sick benefits he was out nearly every day, by advice of his physician, when the weather was favorable, and that he was not actually confined to his bed on account of sickness during that time. It did appear, however, that during this period he was not able to perform any labor, or pursue his usual calling. The court said:

"The intention of the parties to a contract of insurance is indemnity, and this intention is to be kept in view and favored in construing its provisions. Having indemnity for its object, a policy of insurance is to be construed liberally to that end, and for this reason conditions and provisos therein will be strictly construed against the insurers, because their object is to limit the scope and defeat the purpose of the principal contract."

In the case of Musser v. Great Northern Life Ins. Co., 218 Mo. App. '640, 266 S. W. 325, the Kansas City Court of Appeals held that the insured was confined in the house, within the legal meaning of a health policy, though taken out by a brother at the doctor's direction about twice a month.

In the case of Southern Surety Co. v. Diercks (Tex. Civ. App.) 250 S. W. 755, the policy contained the following stipulation:

"If any sickness contracted by the insured during the term of this policy, when the insured is regularly treated by a legally qualified physician, necessarily and continuously confines the insured within the house, necessitating treatment thereat for a period beginning during said term, and prevents the insured throughout the period of such confinement from performing any and every kind of duty pertaining to his occupation, the company will pay the insured for the period of such confinement not exceeding twelve consecutive months the monthly indemnity specified in part 1."

As explanatory of this provision of the policy, the trial court gave the following instruction:

"Confinement to the house does not necessarily mean a constant literal restraint within the house; and an occasional visit to the office of her physician for treatment, or taking exercise and walking as a part of the plaintiff's treatment, would not necessarily mean that she was not at such times confined to her house as contemplated by the policy or contract in evidence in this case."

Error was assigned to the explanatory charge quoted, but on appeal to the Court of Civil Appeals at Texarkana, the charge was approved in an opinion by Mr. Justice Hodges, and a writ of error was refused by our Supreme Court.

[1, 2] We approve the more liberal construction adopted by our own case last cited and those cited in connection therewith. The purpose that must have been in the mind of the insured at the time of the taking out of her policy was that she would thereby be indemnified for loss of time for the period specified if occasioned by sickness which would totally incapacitate her from performing her usual work. And the policy construed as a whole, it seems to us, would naturally create such an impression. We think it is evident, as said in one of the cited cases, that the requirement that the insured must be confined within her house or home is but evidentiary. The only legal purpose for the insertion of such a requirement would seem to be that thereby a total loss of time and incapacity to labor would be shown with certainty. While such confinement in the house might present undoubted evidence of a loss of time and incapacity to labor, in this case the court has found the fact that plaintiff by reason of her sickness was in fact totally incapacitated to labor and lost the time for which indemnity was awarded, and this finding is not questioned, and must therefore be accepted by us as an undisputed fact. It cannot therefore be said that appellant has been prejudiced by the failure of plaintiff to literally prove confinement to her home during the entire term of her disability.

[3, 4] Appellant insists that appellee's petition will not support a recovery under paragraph A of the policy above quoted. While the petition, as will be seen from the quotations we have made therefrom, fails to allege that, by reason of her sickness, appellee was confined to her home during the period for which she sought a recovery, she does allege total loss of time and incapacity to labor during that period, which, in general terms, is sufficient if our construction of the policy is correct. It cannot, in any view of the case, be said that appellant's general demurrer should have been sustained. The allegation at all events would bring the plaintiff within paragraph B of the policy. Appellant presented no special exception, and the record fails to show that the court's ruling on the general demurrer was requested or had, and there is no assignment to any action of the court relating thereto. We think it now too late, after verdict and judgment, to justify a ruling on our part sustaining appellant's contention in the particular last mentioned.

On the whole, we think the judgment must be affirmed, and it is so ordered.

### On Motion for Rehearing.

[5] Appellant in its motion for a rehearing insists that our construction of the policy renders clause B of part VIII, upon which appellant relies, wholly superfluous, and upon a casual consideration it might so appear, but we do not think it necessarily so in all cases. The general rule is that, in the absence of fraud, accident, or mistake, parties are sued in accordance with the terms of the

contract construed as a whole, and with effect given to all of its parts when that can be done. We find no fault in this general rule, but in all cases the purpose and true intent of the parties to the contract is to be diligently sought, and in the ascertainment of such purpose the contract as a whole, the situation of the parties, and the circumstances under which the contract was executed, should be considered.

[6] So considering the contract of insurance in question, it is clearly one of indemnity. Its major purpose was to indemnify appellee for loss of time, occasioned by a total incapacity to labor arising from sickness. The insurance company had the clear right to prescribe the kind and character of evidence which would with the greatest certainty establish the fact of loss of time so occasioned when claimed. This it did in the present case by in effect requiring proof of a sickness necessitating confinement in the home and attendance therein of a physician. These provisions are termed "evidentiary" in some of the decisions and have no other reason fairly assignable for their presence in the contract. Where the facts of total incapacity and loss of time are otherwise established without dispute, or contest, as in the case here, reversible error should not be made to rest alone on the mere failure to establish the vital fact by the evidentiary instrumentalities prescribed in the contract. It would be doubtless otherwise in cases where the loss of time and incapacity to labor is questioned or left in doubt. In such cases the indemnifying company can well be said to have the right to insist upon the character and method of proof it had taken the precaution to prescribe.

We conclude that the motion for rehearing should be overruled.