**GREAT AMERICAN RESERVE INSUR-
ANCE COMPANY, Petitioner,**

v.

**Sam Milton LANEY, Respondent.**

No. B–3820.

Supreme Court of Texas.

July 11, 1973.

Rehearing Denied Sept. 25, 1973.

---

Brundidge, Fountain, Elliott & Churchill, Gary W. Maxfield and L. E. Elliott, Dallas, for petitioner.

Coleman, Whitten & Philips, Earl L. Coleman, Denton, for respondent.

POPE, Justice.

The question presented by this appeal is whether plaintiff, Sam Milton Laney, proved his right to recover for a confining sickness which was defined in a policy with Great American Reserve Insurance Company as one which "shall totally and continuously disable and necessarily confine the Insured continuously within doors . . . ." The trial court, without a jury, rendered judgment for Laney. The court of civil appeals affirmed. 488 S.W.2d 481. Great American contends that proof of facts to establish a confining sickness was a condition precedent to Mr. Laney's right to recover for total disability and that, as a matter of law, the proof showed that Laney was not continuously confined within doors. We agree and accordingly reverse the judgments of the court below and render judgment that plaintiff Laney take nothing.

On June 19, 1962, Great American issued its policy which entitled Mr. Laney to $400.00 per month until he reached age sixty-five, upon proof of a confining sickness. Another provision of the policy entitled him to the same amount of money per month but for no more than twenty-four consecutive months if his sickness was a non-confining one. These two relevant policy provisions are:

(Confining Sickness)

ARTICLE II. Section 1. If such sickness shall totally and continuously disable and *necessarily confine the Insured continuously within doors* and shall require the personal care and regular attendance of a legally qualified physician or surgeon, the Company will pay, beginning after the number of days excepted in the schedule, the monthly indemnity specified in the schedule and continuing as long as the Insured remains so disabled and so confined up to

the Insured's attained age of Sixty-Five, or a period of twenty-four months whichever period is greater.

(Non-Confining Sickness)

Section 2. Or, if such sickness shall totally and continuously disable the Insured, *but shall not necessarily continuously confine the Insured within doors,* and shall require the personal care and regular attendance of a legally qualified physician or surgeon, the Company will pay, beginning after the number of days excepted in the schedule, the monthly indemnity specified in the schedule, and continuing as long as the Insured remains so disabled, not to exceed twenty-four consecutive months for any period of sickness. [Emphasis added.]

Mr. Laney claims that the provisions of the 1952 policy have the meaning that court decisions at that time attributed to them. The state of the law construing the confinement provisions, he says, was expressed by the 1927 decision in Federal Surety Co. v. Waite, 297 S.W. 312 (Tex. Civ.App. 1927, writ dism'd). The court ruled in that case that the phrase, "strictly and continuously confined indoors," was only an expression of what, from an evidentiary point of view, would establish total disability. The court in *Waite* rejected the argument that the phrase stated a condition precedent to the insured's right to recover for total disability for the greater period of time than that allowed for disability which was a non-confining illness. It was not until eight years after the issuance of the policy, that the Supreme Court disapproved the *Waite* decision as well as other similar decisions by courts of civil appeals, none of which had the approval of the Supreme Court. United American Insurance Company v. Selby, 161 Tex. 162, 338 S.W.2d 160, 163–164 (1960). *Selby* held that the policy provision which described a confining illness, such as the one we have in this case, was a condition precedent to the insured's right to recover

and was not merely a statement of what evidence would show total disability. Mr. Laney argues that he possessed vested contractual rights in the policy and that the *Selby* decision by the Supreme Court did not retroactively defeat those rights.

It is not necessary that we decide whether the *Waite* rule became a part of the 1952 policy. In our opinion, Mr. Laney has not brought himself within the provisions of either the *Selby* rule or the more liberal *Waite* rule. His own testimony conclusively shows that his sickness, during the period of time here involved, was a non-confining rather than a confining sickness as defined in the policy. It thus fell under section 2 rather than section 1. On May 18, 1955, Mr. Laney suffered a heart attack. Great American commenced paying him $400.00 each month and continued those payments until May 22, 1962. Mr. Laney then filed this suit. He seeks damages in the amount of $400.00 for each month from May 22, 1962, up to February 11, 1968, when he became sixty-five years of age.

Mr. Laney was an active businessman and citizen at the time he first became ill. He operated the Sam Laney Tire Company and also the Sam Laney Motors in Denton, but he has not managed the business or participated in its operation since his heart attack. In the fall of 1955, following his attack in May, he began driving a car equipped with power steering and power brakes. From that time to the time of trial, according to Mr. Laney, each day he would drive by his business, pick up his mail and visit for five or ten minutes and leave. A few times he tried walking to the business from his home but he gave that up because it was too tiring. In the summer of 1956, he went with his wife and son to an automobile show in New Orleans. That was a two-day trip, and he did none of the driving. In 1958, he made two trips to visit his nother in Longview, and he did part of the driving. He would occasionally drive the family maid to and

from work. He testified that he regularly drove his ten-year-old son to school.

Mr. Laney's wife passed away in 1963. He and his young son then began driving to some restaurant each evening to eat. He did his own shopping. After his wife died, he would pick up the maid every Wednesday and later drive her home. In October, 1963, he went with one of his sons to Arkansas to see the Arkansas-Texas football game. Later that same month he drove to Dallas to see the Texas-SMU game, and in November of 1963 he drove to Austin to see the Texas-TCU game. He said he went to Dallas a number of times to see his wife while she was in the hospital.

He testified that in 1965 he was still driving his son to school each day. He attended Sunday morning church services rather regularly. In January of 1965, Mr. Laney commenced calling on a lady, and he visited her in her home three or four evenings a week. They were married in June of that year. In September of 1965, Mr. and Mrs. Laney drove from Denton to the State of Washington on an extended pleasure trip. They would drive from two to three hundred miles each day, and they shared the driving duties. They returned through San Francisco where they took a bus tour of the city. They spent one night in Las Vegas where they saw a show in the evening. They then visited the Grand Canyon. In 1966, he and his wife drove to Tennessee. In 1967, he and his wife drove to Biloxi, Mississippi, to a family reunion.

By way of generalization, he said, "I have been confined more or less indoors . . . the greater part of the time." He said at one point in his testimony that he would average being in the house twenty hours and out of the house four hours over a twenty-four hour time span. He said that his physician encouraged him to walk and to take trips or at least consented to the trips.

Mr. Laney's absences from the house were for business and personal reasons.

They were regular and extensive rather than occasional and therapeutic in nature. To hold that he was nevertheless necessarily confined continuously within doors as pleaded by plaintiff, requires us to disregard section 2 of the policy and its definition of a non-confining sickness. 15 Couch on Insurance § 53:144 (2d ed. 1966). We hold that the proof conclusively shows that Mr. Laney's sickness during the time for which he sues, was a non-confining sickness rather than a confining sickness.

The judgments of the courts below are reversed and judgment is rendered that plaintiff take nothing.